**Charles L. PEARCE, Appellant,**

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

No. 16606.

Court of Civil Appeals of Texas.

Dallas.

April 22, 1966.

Rehearing Denied May 20, 1966.

Mullinax, Wells, Mauzy, Levy & Richards, Dallas, for appellant.

Burford, Ryburn & Ford, John L. Estes, Dallas, for appellee.

Strasburger, Price, Kelton, Miller & Martin, Dallas, amicus curiae.

Mock, Banner, McIntosh & Wells, Wichita Falls, amicus curiae.

BATEMAN, Justice.

This workmen's compensation case presents the narrow question of whether an agreement for compromise settlement of a claim under the Act, which specifically provides that it includes liability of the insurer for future medical aid, hospital services, nursing, chiropractic services, and medicines incurred after date of approval of the settlement by the Industrial Accident Board, precludes the employee from subsequently claiming and recovering medical expenses necessarily incurred by him in connection with a recurrence of the physical disability made the subject of the original claim.

The appellant claimed that on January 23, 1962, he sustained a compensable injury causing a detached retina of his right eye. On October 25, 1962 he and the insurer, Texas Employers Insurance Association, appellee herein, entered into a written compromise settlement agreement, which in part provided:

"It is expressly understood that this settlement does include liability of the insurance company for future medical aid, hospital services, nursing, chiropractic services, and medicines incurred after date this agreement is approved by the Board. In the event claimant requires

medical aid, hospital services, nursing, chiropractic services, or medicines in the future as a result of this injury, such services as are authorized under the Workmen's Compensation Law of Texas shall be furnished by Charles L. Pearce."

Attached to the compromise settlement agreement as an exhibit was a statement by appellant reading, in part: "I understand this claim is being settled on a questionable basis because the retinal tear did not appear until after 6 months following my injury and I was suffering from eye trouble before my injury of January 23, 1962."

The compromise settlement agreement was approved by the Industrial Accident Board on November 9, 1962, and the $2,570 consideration therefor was paid to and received by appellant. On or about November 15, 1963, more than a year later, appellant filed another claim with the Board, based upon the same accident of January 23, 1962, for additional hospital, medical and surgical bills necessary in additional repairs to the retina of his right eye. The Board notified counsel for appellant by letter dated December 9, 1963 that its approval of the compromise settlement agreement on November 9, 1962 closed the case, that it had no further jurisdiction and could take no further action unless the compromise settlement agreement were set aside, citing Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116.

This suit was filed in the district court to set aside that "ruling" and to recover such additional medical expenses. The district court sustained the insurer's motion for summary judgment. In his three points of error on appeal the appellant contends that by virtue of the 1957 amendments to the Workmen's Compensation Act he was entitled to medical and hospital services made necessary by the compensable injury at any time in the future and that his attempt to contract away that right before the services were rendered was a nullity.

Before discussing those contentions, however, we should dispose of the appellee's single cross point, by which it challenges the jurisdiction of the trial court. The present claim for the additional medical expenses was filed on November 15, 1963. The Board's letter of December 9, 1963 to appellant's attorneys was as follows:

"On 11–9–62 the Board entered and issued its final order approving a Compromise Settlement Agreement in this case in the amount of $2,570.00, thereby closing the case. The Industrial Accident Board has no further jurisdiction over a claim closed by Compromise Settlement Agreement under the decision in the case of Commercial Casualty Insurance Company vs. Hilton, 87 SWR (2) 1081. Therefore, unless such Compromise Settlement Agreement is set aside by a court of competent jurisdiction for fraud, accident or mistake, this Board can take no further action in your case."

On December 10, 1963 the appellant's attorneys wrote this letter to the Board:

"Please accept this letter as formal notice on behalf of claimant that he is dissatisfied with the award of the Board in the above entitled and numbered cause entered on *November 9, 1962*, Claimant hereby gives formal notice that he will not abide by said award.

"Within the time allowed by law, suit will be filed in a court of competent jurisdiction to set aside and hold for naught the award of the Board entered on *November 9, 1962.*"

Appellee says that the trial court had no jurisdiction because: (1) the notice of appeal plainly states that it is from the order of the Board of November 9, 1962, which was the order approving the compromise settlement agreement, and, not being filed within twenty days thereafter as required by Art. 8307, Sec. 5, Vernon's Ann.Civ.St., the notice came too late; and (2) the appellant had no right to appeal from the Board's order of December 9, 1963 because

it was not a "final ruling and decision" of the Board and was therefore not appealable.

■ As to the first point, we think it is obvious that appellant's notice of appeal was intended to be an appeal from the Board's order of December 9, 1963, refusing to entertain the new claim for additional medical expenses—so obvious, in fact, that the Board, in acknowledging it by letter dated December 12, 1963, referred to it as "your Notice of Intention to Appeal the Board's letter of December 9, 1963," without even mentioning the discrepancy. Neither the Board nor appellee was confused, misled or in anywise harmed by this obviously inadvertent error. Therefore, we think that part of the cross point is without merit.

■ Appellee's other contention, that the action of the Board evidenced by its letter of December 9, 1963, is not an appealable order, presents a question upon which two of our sister Courts of Civil Appeals have recently differed. Hart v. Texas Employers Ins. Ass'n, Tex.Civ.App., 387 S.W.2d 706, wr. ref. n. r. e., involved a letter from the Board to claimant's attorney stating that the Board had jurisdiction over a claim only 401 weeks from date of injury and that since that period had expired, "the Board will be unable to assist you and your client." The Amarillo court held that the letter was not such a final ruling or decision as would authorize an appeal to the district court. However, in Holt v. Employers Reinsurance Corp., Tex.Civ.App., 393 S.W.2d 329, the Houston Court of Civil Appeals held that a letter from the Board refusing to act for the same reason was such a denial of the claim as to be a final award and, therefore, appealable. The court, speaking through Mr. Justice Coleman, said, in part:

"This action should not be considered as merely postponing the hearing indefinitely or as a refusal to grant a hearing. It was a denial of the claim on the merits as a matter of law, and not merely on

a question of Board procedure. It involved ascertaining facts, undisputed, it is true, and the application of the law to those facts. Mandamus would not lie. * * * The letter under consideration in this case was a final award authorizing an appeal to the courts."

The Supreme Court granted writ of error on November 24, 1965 but apparently has not yet decided the case. In our opinion, the letter of the Board dated December 9, 1963 in the case at bar was such a "final ruling and decision" as to be appealable. Appellant was entitled, we think, to have this decision reviewed, and this appeal was the only available remedy. Todd v. Southern Casualty, Tex.Civ.App., 18 S.W.2d 695, affirmed Tex.Com.App., 29 S.W.2d 973. The equitable remedy of a writ of mandamus would not be available because of the presence of an adequate remedy at law, viz., the appeal to the district court under Art. 8307, Sec. 5.

For these reasons we overrule appellee's cross point and hold that the appeal effectively invoked the jurisdiction of the trial court.

Addressing ourselves now to appellant's contention that the summary judgment was unwarranted because appellant did have a right under the amended Act to the additional medical and hospital services and that his release of appellee's liability therefor was a nullity, we first consider the effect of the 1957 amendments. Prior thereto that part of the Act providing for curative measures (Art. 8306, Sec. 7) limited the injured employee to ninety-one days of medical attention and one hundred eighty days of hospital services. The 1957 amendment, however, requires the insurer to furnish all such services "as may reasonably be required at the time of the injury *and at any time thereafter* to cure and relieve from the effects naturally resulting from the injury." (Italics ours.)

The amendment made no change in Art. 8306, Sec. 14, which since 1917 has been as

follows: "No agreement by any employé to waive his rights to compensation under this law shall be valid." This was held, in Jenkins v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 211 S.W. 349, wr. ref., not to prohibit a binding compromise settlement after injury, having been intended only to prohibit agreements of employees, prior to injury, to waive their rights under the Act. The authority to compromise workmen's compensation claims is found in Section 12 of Article 8307, V.A.C.S., which was not amended. It provides:

"Where the liability of the association or the extent of the injury of the employé is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

However, Article 8307, Section 5, which sets forth the procedure for appealing from decisions of the Board, was amended by adding a paragraph as follows:

"Notwithstanding any other provision of this law, as amended, no award of the Board, and no judgment of the court, having jurisdiction of a claim against the association for the cost or expense of items of medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances furnished to an employee under circumstances creating a liability therefor on the part of the association under the provisions of this law, shall include in such award or judgment any cost or expense of any such items not actually furnished to and received by the employee prior to the date of said award or judgment. The first such final award or judgment rendered on such claim shall be res judicata of the liability of the association for all such cost or expense which could have been claimed up to the date of said award or judgment and of the issue that the injury of said employee is subject to the provisions of this law with respect to such items, but shall not be res judicata of the obligation of the association to furnish or pay for any such items after the date of said award or judgment. After the first such final award or judgment, the Board shall have continuing jurisdiction in the same case to render successive awards to determine the liability of the association for the cost or expense of any such items actually furnished to and received by said employee not more than six (6) months prior to the date of each such successive award, until the association shall have fully discharged its obligation under this law to furnish all such medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances to which said employee may be entitled; provided, each such successive award of the Board shall be subject to a suit to set aside said award by a court of competent jurisdiction, in the same manner as provided in the case of other awards under this law."

In Bituminous Cas. Co. v. Whitaker, Tex. Civ.App., 356 S.W.2d 835, no wr. hist., decided in 1962 and involving injuries received in 1959, the claimant sued for and recovered $750 "for future medical expenses." It was held that Section 5 of Article 8307, as amended in 1957, prohibits the rendition of a judgment for future medical expenses, and the judgment was reformed to eliminate that item.

Appellant argues that, since the courts and the Industrial Accident Board are expressly prohibited from rendering judgments or awards for medical expenses not yet actually incurred, it would be impossible for an injured workman to contract away in advance his right to such services, and that the Board is consequently without power to approve with the "force of an award" the contracting away of such a claim. He argues that since a court judgment which seeks to cut off those claims for future medical services would not be *res judicata* of a later claim, it is inconceivable that such court could approve a compromise settlement of a claim which it may not consider.

Appellant also argues that the language of Section 12 of Article 8307, which authorizes compromise settlements, was subordinated to the limitations of Art. 8307, Sec. 5, by the words "notwithstanding any other provision of this law, as amended, * * *" and that since Section 12 was not amended to include authority to compromise claims for future medical services, the Legislature must have intended that such claims could not be compromised.

We are unable to follow appellant's reasoning. As we read them, these two sections are not inconsistent, but on the contrary relate to entirely different aspects of the Workmen's Compensation Act and are in harmony with each other. They endeavor to accomplish entirely separate and distinct ends. Section 12 deals with compromise settlements, which are agreed upon to avoid adjudication by final award, while Section 5 deals wholly with final rulings and decisions, whether they be the first award or successive awards. The obvious purposes of the paragraph added to Section 5 by the 1957 amendments were: (1) to implement the unlimited medical and hospital provisions of Section 7 of Article 8306; and (2) to provide certain safeguards for both the claimant and the insurer. These were: for the insurer—(a) no award or judgment is authorized for such additional expenses unless and until the services are actually furnished, and (b) liability for such expenses attaches only "after a final award or judgment" and then only for such items as are actually furnished to and received by the employee not more than six months prior to the date of each successive award; for the claimant—the giving to the Board of "continuing jurisdiction" after "the first such final award or judgment," to render "successive awards" for future medical expenses.

Both before and after the 1957 amendments Section 5 provided for the method of appeal to the courts, but always from a "final award" or "successive awards" thereafter. But the approval by the Board of a compromise settlement agreement is neither an award of compensation nor a denial thereof. Commercial Cas. Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116; Industrial Accident Board v. Glenn, 144 Tex. 378, 190 S.W.2d 805; Cordova v. Associated Employers Lloyds, Tex. Civ.App., 250 S.W.2d 945, wr. ref.

■ Prior to the 1957 amendments the claimant could lawfully compromise his claim for past and future disability benefits (up to 401 weeks), as well as past and future medical benefits (up to 91 days) and past and future hospital benefits (up to 180 days), notwithstanding the prohibition against a claimant's waiving his rights contained in Art. 8306, Sec. 14. We find nothing in the 1957 amendments to indicate a change of legislative intent or policy in this respect. The law favors the settlement of controversies by compromise as being in the interest of the public. 12 Tex.Jur.2d, Compromise and Settlement, § 2, p. 287; Ross v. Seip, Tex.Civ.App., 154 S.W.2d 958, 960, wr. ref. w. o. m.; 15 C.J.S. Compromise and Settlement § 23, p. 738.

■ Moreover, we are not here discussing an unapproved agreement between the claimant and the insurer, or between the claimant and his employer, as in Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675, but a compromise settlement agreement in the usual form and duly presented to and approved by the Industrial Accident Board of Texas, the very agency established by law to perform that function. There is no suggestion in this record that the order of the Board approving the compromise settlement was actuated by improper motives or that there was any fraud, accident or mistake involved; the only complaint being that the Board lacked legal authority to approve that part of the settlement involving future medical services. We agree with the view expressed by the Board and the trial court, that the compromise settlement agreement is binding on the parties unless and until it is lawfully set aside. Cordova v. Associated Employers

Lloyds, Tex.Civ.App., 250 S.W.2d 945, wr. ref.; Lowry v. Anderson-Berney Building Co., 139 Tex. 29, 161 S.W.2d 459, 463; Davis v. Commercial Standard Ins. Co., Tex.Civ.App., 194 S.W.2d 599, wr. ref. n. r. e. No effort has been made to set it aside. Therefore, all of appellant's points of error are overruled.

Because we think the summary judgment appealed from was correct, as explained above, it is

Affirmed.