**AMERICAN GENERAL LIFE INSURANCE COMPANY, Appellant,**

v.

**Bonnie James COPLEY, Appellee.**

**No. 109.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

May 15, 1968.

Rehearing Denied June 12, 1968.

Roger R. Wright, Jr., Baker, Botts, Shepherd & Coates, Houston, for appellant.

Clark G. Thompson, Spiner, Pritchard & Thompson, Houston, for appellee.

TUNKS, Chief Justice.

In December, 1961, the appellant issued a life insurance policy in the amount of $10,000.00 on the life of Lawrence B. Copley, Jr. with his wife, appellee, as beneficiary. On January 15, 1962, the insured died. On March 28, 1962, the appellee accepted $4,500.00 in payment of her claim as beneficiary of the insurance policy and executed a full written release. Thereafter, the appellee filed suit admitting the payment to her of the $4,500.00 but seeking to recover the balance of the $10,000.00 benefits under the policy together with attorney's fees. The defendant answered by general denial and by pleading the release as a bar to recovery. The release was attached to defendant's answer as an exhibit and was incorporated by reference.

The case was tried to a jury which found that there was not a bona fide dispute as to appellant's liability under the policy, that the insured did not commit suicide and that $3,000.00 represented appellee's reasonable attorney's fees. The trial court rendered judgment on the verdict for the appellee for the $5,500.00 balance of the face amount of the policy together with interest, penalties and attorney's fees. The insurance company has appealed.

It is the position of the appellant insurance company that there is no evidence to support the jury's finding to the effect that there was not a bona fide dispute as to liability at the time of the execution of the settlement agreement. Alternatively, appellant contends that the evidence was insufficient to support such finding by the jury that there was no such dispute. We sustain the appellant's point of error to the effect that there was no evidence to support the jury's finding that there was not a bona fide dispute as to liability under the policy in question.

The insured, Lawrence B. Copley, Jr., died at about 7:00 o'clock a. m. on Monday, January 15, 1962. The appellee, his wife, testified as follows: Her husband came home from work on the Thursday or Friday preceding his death, ill with a cold and fever and he continued to feel ill over the weekend. She, at the time, had a small baby that was ill and required feeding every two or three hours during the night. On Sunday night, on the several occasions during the night when she got up to feed the baby, she observed that he was sleeping restlessly. At about 5:30 in the morning when she again got up to feed the baby, her husband called to her in distress. When he tried to get up he staggered against the wall and fell. She helped him back onto the bed. She went to the house of a neighbor who called an ambulance. The husband was taken by ambulance to Little York Hospital in Houston, Texas. The wife later went to the hospital. The husband was given emergency treatment at Little York Hospital and then transferred to Jefferson Davis Hospital. He was dead on arrival at the latter hospital.

The emergency room record of Little York Hospital concerning the admission of the husband on the occasion in question bears the following notation: "Drank wood alcohol—Sat. Probably attempted suicide—(according to wife.)" The hos-

pital record also notes: *"Impression severe alcolosis due to methyl acl. poisoning."* The record also recites, "police notified 6:40 a. m. and will be out." The record was signed by a medical doctor and a registered nurse.

In a signed and sworn written statement by appellee given to an investigator for the Harris County Sheriff's office on Tuesday, January 16, 1962, the following language appears, "When my husband got drunk—he got drunk. Just so it was something to drink, he didn't care what it was. He has been known to drink moonshine, beer, wine; however, to my knowledge, he never drank any wood alcohol until this past Saturday, January 13, 1962 * * *. I also spent the night with the Minister and his wife—this was Friday night, January 12, 1962 * * *. Saturday morning, January 13, 1962, my husband came to the minister's house at about 9:00 o'clock * * *. The children and I went home with my husband and when he got home he did not have anything to drink, so he drank some wood alcohol. He manufactures soap and has wood alcohol here at the house * * *. He started getting drunk and made the remark to me that he had found a way to get on a cheap drunk * * *." At another place in her statement she said that she had told a nurse at the hospital that her husband had drunk some wood alcohol.

The death certificate showed that the insured died of acute alcoholism. The autopsy report of the Harris County Medical Examiner also showed that the cause of death was acute alcoholism, that the ethyl alcohol content of his blood was 0.341% and that the test for methyl alcohol was negative.

One question asked the insured in his written application for insurance was, "Have you ever used * * * narcotics or sedatives habitually or intoxicating liquors to excess?" The insured answered that question in the negative.

The appellee, in testifying, denied having told the hospital personnel that her husband had attempted to commit suicide. She also denied the truth of some of the matters contained in her statement to the sheriff's investigator saying that she was emotionally disturbed at the time of giving the statement and that she had not read it before signing it. The plaintiff admitted, however, in her first amended original petition, that she had, while irrational, made the statement that her husband had committed suicide.

The insured was, at the time of his death, under probation of a sentence for embezzlement from a former employer.

Soon after her husband's death the appellee filed her claim for benefits under the policy and then left for her former home in Kentucky.

The appellant made an investigation of the circumstances of the insured's death. All of the facts recited above were discovered in that investigation. The insurance company concluded that there was a false statement in the application for insurance which false statement was material to the risk and that there was evidence that the insured had committed suicide. The policy excluded from coverage death by suicide within two years from the date of its issuance.

On March 27, 1962, Marvin J. Tomlinson, representing the appellant, went to Portsmouth, Ohio, where the appellee was then staying with her sister and brother-in-law, to discuss settlement of her claim with appellee. Appellee told him she had discussed the matter with an attorney and had been told that she was entitled to the full amount of the policy. Tomlinson then sought permission to arrange a conference with appellee and her attorney. On the following day, the appellee, her brother-in-law, and Tomlinson went to the attorney's office to discuss the claim. Tomlinson showed the attorney the information in his file on which the company was basing its denial of liability. The attorney conferred

with the appellee and her brother-in-law out of the presence of Tomlinson and after such conference recommended compromise and settlement of the claim. Negotiations resulted in a settlement proposal in the amount of $4,500.00 which the appellee, on the advice of her counsel, accepted. The appellee's Ohio attorney testified by deposition, as to his participation in the settlement, that he participated as attorney for appellee, that he recommended a settlement, that he read and explained the settlement agreement to appellee and that it was signed in his office. He, the attorney, and appellee's brother-in-law, signed the settlement agreement as witnesses. Appellee, herself, testified that the attorney was of her own selection on recommendation of a neighbor. After the execution of the settlement agreement, Tomlinson delivered to appellee a check in payment of the $4,500.00. This check was accepted and cashed by the appellee.

The parties here are not in dispute as to the basic rules of law applicable to accord and satisfaction. An accord is a new contract which the parties agree shall be a substitute for and discharge of an existing obligation. The performance of the new contract is a satisfaction of the obligation. A valid accord and satisfaction is a bar to recovery on the original obligation. Slaughter v. Temple Lumber Co., Tex.Civ.App., 307 S.W.2d 108, writ ref., n. r. e.; Ensley v. Spickard, Tex.Civ. App., 232 S.W.2d 780, err. ref. Where there is an undisputed obligation to pay a liquidated amount, an agreement to pay and to accept a lesser amount is not a valid accord because it is not supported by sufficient consideration. Tortuguero Logging Operation Ltd. v. Houston, Tex.Civ.App., 349 S.W.2d 315, writ ref., n. r. e. However, sufficient consideration may inhere in or arise out of a good faith dispute as to liability even if the amount claimed is liquidated. Industrial Life Ins. Co. v. Finley, (Tex.Sup.Ct.), 382 S.W.2d 100.

In this case there is no question that the claim was for a liquidated amount. The execution of the instrument setting forth the terms of the accord is not denied. The performance by appellant of its obligation fixed by the accord, the payment of the $4,500.00, and the acceptance of that amount by appellee are established by uncontroverted evidence. The only question to be answered is whether there was such a good faith dispute as to liability as that the appellant's acceptance of liability for less than the full amount of the claim was consideration for appellee's surrender of her claim to that portion of the benefit under the policy which was not paid.

We are aware of the fact that in determining whether there was any evidence to support the jury's finding that there was not a good faith dispute of liability at the time of the accord and satisfaction, "We may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings and we must disregard all evidence which would lead to a contrary result." Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359. However, we are not reviewing the record to determine whether the evidence did or did not show a defense under the policy in question. The question is, rather, whether the evidence shows that at the time of the accord and satisfaction, the facts known were such that a reasonable person, acting in good faith, would have concluded that there was no substantial basis for denying liability. In Simms Oil Co. v. American Refining Co. (Tex.Com.App.), 288 S.W. 163, 164, it is said: "Sufficient consideration for accord may inhere in or arise out of a dispute as to liability upon a liquidated claim. This presupposes that denial of liability in whole or in part, is not merely factitious or mala fides."

The appellee pleaded that appellant acted fraudulently in procuring the settlement of its claim, but there is nothing in the evidence to sustain that allegation and no issue was submitted as to any such fraud. There is no evidence of any personal spite or ill will on the part of Tomlinson

or any other representative of the appellant toward the appellee. The only evidence in the record from which it can be determined whether the dispute of plaintiff's claim was "factitious or mala fides" is the evidence as to the facts known to Tomlinson relating to a possible defense or defenses to the claim. Had the evidence shown the absence of any such facts which would be evidence of a defense to the claim the jury would have been justified in finding from such absence of evidentiary facts, that the dispute was not in good faith.

Here Tomlinson had evidence that appellee, the person in the best position to know, said that her husband had tried to commit suicide. This evidence was the hospital record. Tomlinson also had evidence (the statement appellee gave to the sheriff's investigator) that the insured had been drinking heavily for several days before his death and that he was under probationary sentence for embezzlement—a motive for suicide. It cannot be found that a decision based on this evidence to dispute the claim on the policy on the ground of suicide was so frivolous that, in the absence of any other evidence, it shows bad faith.

■ Furthermore, as we have noted above, there was evidence that the insured made a false statement on his application for the policy in question when he answered in the negative a question as to whether he had ever used intoxicating liquors to excess. The appellee's statement to the sheriff's office would certainly constitute such evidence of the falsity of the insured's statement on his application. Furthermore, the record conclusively shows that the insured died of acute alcoholism. In view of that evidence available to the appellant and known to its representative, it cannot be said that a dispute of appellee's claim based on the insured's misrepresentation on the application was, on its face, in bad faith. Allen v. American Nat'l Ins. Co. (Tex.Sup.Ct.) 380 S.W.2d 604.

Unless the very assertion of the defenses, of itself, showed bad faith under the circumstances, there was no evidence to support the jury's finding that there was no good faith dispute of liability. The testimony of appellee's own lawyer in Ohio showed that there was no overreaching on the part of Tomlinson. He, the lawyer, was furnished with information from Tomlinson's file, and, after discussion with the appellee of that information wherein at least some of it was confirmed by her, he recommended the settlement.

■ We hold that there was no evidence that the dispute as to liability was in bad faith and that, under the authorities cited, there was a valid accord and satisfaction which was supported by consideration and which was a complete defense to appellee's claim for additional payment under the policy.

Both appellant and appellee cite and either rely on or distinguish several Texas cases involving the application of the law of accord and satisfaction to claims on life insurance policies. All of those cases apply the accepted rules of the law of accord and satisfaction and none of them are sufficiently similar on their faces to furnish any precedent for the decision of this case.

■ In this case, as in all such cases, we are of the opinion that consideration should be given to the policy of the law which encourages settlement of disputed claims. While that policy should not be used to validate coercion of a claimant to the extent of accepting less than the full amount of an undisputed liquidated claim, yet it requires the recognition of valid dispute as to liability and encourages early and inexpensive disposition of validly disputed claims. Fidelity-Southern Fire Ins. Co. v. Whitman, Tex.Civ.App., 422 S.W.2d 552, writ ref., n. r. e.; State v. Cook, Tex. Civ.App., 407 S.W.2d 876, writ ref., n. r. e.; Pearce v. Texas Employers Ins. Ass'n, Tex.Civ.App., 403 S.W.2d 493, writ ref.,

n. r. e. There was no evidence of any coercion here and there was uncontroverted evidence of a valid basis for appellant's denial of liability.

Judgment of the trial court is reversed and judgment is here rendered for defendant.