**HARLEYSVILLE MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**Dr. J. N. FRIERSON et al., Appellees.**

**No. 357.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 6, 1970.

Rehearing Denied June 10, 1970.

C. A. Searcy Miller, L. W. Anderson, Anderson, Henley, Shields, Bradford & Pritchard, Dallas, for appellant.

Thomas P. Sartwelle, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellees.

TUNKS, Chief Justice.

On January 2, 1967, Jessie Paul, in the course of his employment by Foremost Supermarket, sustained an accidental injury. The appellant, Harleysville Mutual Insurance Company, was the workmen's compensation carrier for Foremost Supermarket. On January 8, 1967, Jessie Paul went to Memorial Baptist Hospital in Houston seeking treatment for his accidental injury. Dr. J. N. Frierson was called by a nurse to administer the requested treatment. Jessie Paul was admitted to the hospital and remained there under treatment until he was discharged on February 8, 1967. Dr. Frierson treated Jessie Paul during the time he was in the hospital and thereafter continued treating him in his office until April 12, 1967. Jessie Paul's bill at Memorial Baptist Hospital was $1,474.20 and his bill for the treatment by Dr. Frierson was $429.00.

Both Foremost Supermarket and Harleysville Mutual Insurance Company had notice of Jessie Paul's injury within thirty days. Neither the employer nor the carrier requested the treatment that was given to Jessie Paul at the hospital and by the doctor. Dr. Frierson, however, sent to Harleysville agent four written reports concerning the hospitalization and treatment of the employee. Those reports were dated January 12, January 20, February 14 and March 13, 1967. Harleysville did not respond to Dr. Frierson's reports until March 16, 1967 when it returned the doctor's March 13th letter and informed him that they were denying that Jessie Paul has sustained an injury while working for Foremost Supermarkets.

On February 10, 1967, two days after Jessie Paul was discharged from the hospital, Harleysville entered into a written settlement agreement with him by which it was agreed that the employee should be paid $525 in full payment of his compensation benefits, including past and future medical treatment. This settlement was submitted to the Industrial Accident Board and was approved on February 20, 1967.

Although Harleysville knew that Jessie Paul had been admitted to Memorial Baptist Hospital for treatment of an injury alleged to have been incurred in the course of his employment (their agent actually visited Paul in the hospital) and that Dr. Frierson had treated him for that injury, they did not notify either the hospital or the doctor before their settlement agreement with Paul and did not advise them of their denial of coverage until March 16, 1967. The doctor and the hospital had no notice of such settlement and denial of coverage from any other source. At no time did either of them authorize Jessie Paul to settle their claims against Harleysville for their bills nor to, in any other manner, represent them as to their said claims.

Upon the insurance company's refusal to pay for Paul's treatment, Dr. Frierson, on April 13, 1967, wrote a letter to the Industrial Accident Board giving the name of the injured employee, the date and description of the accident, the names and addresses of the employer and the compensation carrier, the description of the treatment given and itemized statements of the unpaid hospital and doctor bills. The letter also informed the board of the refusal by Harleysville to pay those bills. Ultimately the board accepted that letter as a timely and properly filed claim by the doctor and the hospital and, after hearing, rendered an award allowing recovery by them of the amounts of their bills. Harleysville timely gave notice of dissatisfaction with that award and filed suit in the district court of Harris County to set it aside. The hospital and the doctor answered and filed cross-actions for their claims. A non-jury trial in the district court resulted in judgment for the doctor and the hospital. Harleysville has perfected its appeal from that judgment.

■ The apellant's first three points of error are based on the proposition that

the settlement agreement with Jessie Paul and the Industrial Accident Board's approval thereof are res judicata of the appellees' rights. Those points are overruled. The settlement agreement and the board's approval did not constitute an adjudication of the issues of this or any other lawsuit. Lowry v. Anderson-Berney Bldg. Co. (Tex.Comm.App., opinion adopted), 139 Tex. 29, 161 S.W.2d 459.

Findings of fact and conclusions of law were filed by the trial court. They include findings that Jessie Paul sustained an accidental injury in the scope and course of his employment, that his employer and the appellant had notice within thirty days and that after such notice the appellant "refused, failed or neglected" to furnish medical treatment within a reasonable time. Appellant's fifth and sixth points of error attack this last findings on the no evidence and insufficient evidence grounds. Appellant's argument in this respect is quoted from its brief as follows:

"* * * Thus, a finding that the Insurer failed, refused or neglected to provide reasonable medical aid must be predicated on a finding that at the time the Insurer made such refusal it was apprised of whether or not the claimant had suffered a *compensable* injury."

■ It is apparently appellant's position that so long as it entertained a subjective doubt as to the compensable nature of the injury to Jessie Paul it could avoid its obligation under Art. 8306, Sec. 7, Vernon's Ann.Tex.Civ.St., to furnish medical aid and hospitalization. Its liability was not so conditioned. The trial court found, on sufficient evidence, that Jessie Paul sustained a compensable injury of which the employer and appellant had timely notice. These facts, under Section 7, imposed upon appellant the obligation to furnish the employee medical and hospital aid. That obligation was not conditioned upon the carrier's acceptance of the fact that the injury was a compensable one. The trial court's further finding, on sufficient evidence,

that, after notice to the employer and the carrier, the carrier refused, failed or neglected to furnish medical aid established the appellees' cause of action for the reasonable value of the necessary medical aid furnished the employee by them. Texas General Indemnity Co. v. Hancock, Tex. Civ.App., 422 S.W.2d 565, no writ hist.; Texas Employers' Ins. Ass'n. v. Steadman, Tex.Civ.App., 415 S.W.2d 211, ref., n. r. e.; Trinity Universal Ins. Co. v. Farley, Tex. Civ.App., 408 S.W.2d 776, no writ hist.

■ Appellant's eighth and ninth points of error are to the effect that the appellees failed to prove that they had filed their claims within six months of the date of the injury to Jessie Paul. While there is no serious dispute that Dr. Frierson's April 13, 1967 letter to the Industrial Accident Board constituted a sufficient claim by the doctor, the appellant contends that the doctor's letter did not constitute a claim by the hospital because there is no evidence that the doctor was authorized by the hospital to file a claim in its behalf. Those points of error are overruled.

Article 8307, Sec. 4a, V.A.T.S., requires that "a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury * * *." There are no requirements as to any formality in the filing of such claims. There is no requirement that it be filed personally by the claimant or by an authorized agent. It is the consistent holding of the courts that 8307, Sec. 4a, and, in fact, all of the workmen's compensation statutes, be construed liberally in favor of the claimant. Lewis v. American Surety Co., 143 Tex. 286, 184 S.W.2d 137; Booth v. Texas Employers' Ins. Ass'n., 132 Tex. 237, 123 S.W.2d 322; Liberty Mutual Insurance Co. v. Smith, 410 S.W.2d 27, writ ref., n. r. e. Dr. Frierson's letter of April 13, 1967 containing the detailed information summarized above, constituted a sufficient compliance with the statutory requirement of the filing of the claim not only on behalf of the doctor, himself, but

also on behalf of Memorial Baptist Hospital.

Rule 93, Texas Rules of Civil Procedure, provides that:

"(n) In the trial of any case appealed to the court from the Industrial Accident Board the following, if pleaded, shall be presumed to be true as pleaded and have been done and filed in legal time and *manner,* unless denied by verified pleadings: * * *

"(2) Claim for compensation." (Emphasis added).

█ Appellant, by sworn pleading, denied that the appellees' claims were filed within six months but did not, by sworn pleading, question the manner of the filing of those claims. Under that circumstance it would be presumed that the claim of the hospital filed by a doctor who was shown to be a member of its staff was filed in the proper manner.

Appellant's fourth and seventh points of error are based upon its contention that the compromise settlement agreement with Jessie Paul "cut off appellant's liability for medical and hospital expenses as a matter of law." The settlement agreement contained the following language:

"Accrued medical and hospital expense will be paid by: /s/ Jessiee Paul

"It is expressly understood that this settlement does include liability of the insurance company for future medical aid, hospital services, nursing, chiropractic services, and medicines incurred after date this agreement is approved by the Board. In the event claimant requires medical aid, hospital services, nursing, chiropractic services, or medicines in the future as a result of this injury, such services as are authorized under the Workmen's Compensation Law of Texas shall be furnished by /s/ Jessie Paul"

On February 10, 1967, the date of the settlement agreement, the representatives of the insurance company knew that Jessie Paul had been hospitalized in Memorial Baptist Hospital for a month and that he had been and would continue to be treated by Dr. Frierson. Nevertheless the settlement was made without any notice to the doctor or to the hospital. They, the doctor and the hospital, did not learn of the settlement until, after the doctor had filed their claims, he received a letter from the Industrial Accident Board informing him of the settlement. When the doctor, on March 13, 1967, sent his fourth written report to the insurance company, they returned it to him saying:

"Dear Dr. Frierson:

"We are returning your letter to us of March 13, 1967. The insurance company, Harleysville Mutual Insurance Co., has advised me that this was not a workmens comp case, as the employer of Jesse Paul denied that he had been injured while on his job.

"Therefore, the company will be making no payments in connection with workmens compensation for this man. I am sorry if you have been under the impression that this would be covered under workmens comp, but no one in our office authorized anything for this Mr. Paul, and the company adjuster here in Houston, Mr. C. J. Kwas, stated that he has never authorized anything, either.

"If you have any questions regarding this case, please call me at this office and I will discuss it with you in detail. Thank you very much,

"Olga Thompson

"(mrs.) Olga Thompson"

Even at that late date the doctor was not told that Paul had settled his claim for compensation, including past and future medical and hospital expenses.

█ The facts proven and found by the trial court created independent causes of action in favor of the hospital and the

doctor against the compensation carrier for the reasonable amount of their charges for the necessary medical and hospital services to Jessie Paul. Maryland Cas. Co. v. Hendrick Memorial Hospital, 141 Tex. 23, 169 S.W.2d 969. However, to recover they had the burden of proving the facts which obliged the compensation carrier to furnish such medical and hospital aid. Jessie Paul had the capacity to discharge the compensation carrier from its liability to furnish him such aid by settlement of his claim, with approval of the Industrial Accident Board. Pearce v. Texas Employers Ins. Ass'n., Tex.Civ.App., 403 S.W.2d 493, writ ref., n. r. e., 412 S.W.2d 647. Thus the settlement agreement between Jessie Paul and Harleysville, approved on February 20, 1967, effectively discharged the carrier of its liability to reimburse Jessie Paul for any medical expenses he had incurred and from liability to furnish him such aid in the future. But the doctor and the hospital were not parties to that settlement agreement. The agreement, therefore, did not discharge the carrier from the independent causes of action which already had accrued to them. Jessie Paul, could not, without their authority, compromise their accrued rights to be paid for the services that they had rendered to the employee during the time the compensation carrier was obliged to furnish those services to him and before that obligation was terminated by the settlement agreement.

The situation presented here, insofar as it concerns the services rendered Paul before the settlement agreement, is similar to that involved in Commercial Standard Ins. Co. v. King & Co., Tex.Civ.App., 96 S.W. 2d 251, no writ hist. That was a workmen's compensation death case. The carrier entered into a settlement agreement with the beneficiaries. Later the undertaker that had furnished the funeral service filed claim to be compensated therefor by the compensation carrier. The Court, at p. 253 said:

"* * * The insurance carrier cannot relieve itself of liability by making settlement with the beneficiaries; especially so, when it has knowledge or notice that there is a claim for burial expenses, and the board's approval of the settlement is made ex parte and without notice in so far as the undertaker is concerned. The situation of the undertaker in such case is analogous to that of a beneficiary who has been ignored in a settlement with other beneficiaries."

The evidence here showed that all of the services performed by Memorial Baptist Hospital were performed before February 20, 1967, the day the settlement agreement between Jessie Paul and appellant was approved. The trial court, therefore, properly rendered judgment for the hospital for the full amount of its bill. Dr. Frierson's itemized bill was received in evidence. It shows that of the services performed by him only seven office calls at $4.00 each occurred after February 20, 1967. As of the date of those office calls Jessie Paul had, by his approved settlement agreement, terminated the obligation of appellant to furnish him medical aid. The doctor could not establish a cause of action against the compensation carrier for the value of the services it was not obliged to furnish. The trial court's judgment in behalf of Dr. Frierson for the entire amount of his bill is reformed by reducing it in the amount ($28.00) represented by the office calls made after February 20, 1967.

As so reformed, the judgment of the trial court is affirmed. Costs are adjudged against the appellant. Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730. Rule 448, T.R.C.P.