**SOUTH TEXAS ICEE CORPORATION, INC., et al., Appellants,**

v.

**The JOHN E. MITCHELL COMPANY, Appellee.**

No. 699.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Jan. 24, 1973.

Rankin, Kern & Martinez, H. Hollis Rankin, Jr., McAllen, for appellants.

Stiernberg, Skaggs & Koppel, Jack Skaggs, Harlingen, for appellee.

## OPINION

BISSETT, Justice.

This is a suit to recover damages for an alleged breach of contract. South Texas Icee Corporation and Gulf Coast Icee Corporation, plaintiffs, sued John E. Mitchell Company, Inc., defendant, to recover damages allegedly resulting from defendant's breach of its contract to supply plaintiffs with Icee Machines. After a jury trial, a take nothing judgment was entered. Plaintiffs have appealed. We affirm.

The record reflects that on January 1, 1963, defendant, who manufactured Icee Machines (machines that dispensed a carbonated semi-frozen drink), and Calvin H. Hazlewood entered into a distributorship contract whereby the latter was designated as a dealer to sell or lease the defendant's machines to third parties "in accordance with the established policies of the John E. Mitchell Company". The agreement could be cancelled by either party on ninety days written notice.

In 1964, Jerry McGilvray and C. L. Klinck, Jr., through contract with Hazlewood, became interested in installing Icee

Machines in south and southwest Texas. McGilvray, who owned two drive-in grocery stores in McAllen, then worked out a lease arrangement with Hazlewood whereby two of the machines were installed in his stores on a lease rental basis. Another machine was later purchased. These three machines were eventually sold to plaintiff South Texas Icee Corporation.

McGilvray testified that in March, April, or May, 1964 he and Tom Devine went to Dallas where they consulted with "the Mitchell people", including Barney Kidd, Division Manager of defendant's Icee Division, "to see if we could get a supply of machines". He said that he disclosed to them in detail his plans for development, and that he told defendant's representatives that he and his associates intended to buy the machines from defendant and then lease them out to third parties on a royalty basis. He further stated, in substance, that his plan of operations was approved by defendant's agents and that he was assured by them that defendant could supply him with the machines in the quantity needed in order to develop his territory. Following that meeting, McGilvray and his associates incorporated plaintiff South Texas Icee Corporation on July 29, 1964. Gulf Coast Icee Corporation was incorporated on July 28, 1965. Agreements were made with Hazlewood providing for the sale and service of Icee Machines in certain named counties. By July, 1965, South Texas Icee Corporation had purchased fifteen machines from defendant. Business was extremely good and South Texas Icee Corporation was realizing large profits from its operations. Plans were formulated for an expansion of the business.

On July 30, 1965, defendant notified Hazlewood that it was not going to sell any more machines and that it intended to thereafter lease the machines to third parties. Hazlewood was told "Do not pursue any additional sales at this time, as our total production will be needed for our commitment in the program". McGilvray, the president of South Texas Icee Corpora-

tion, was then informed by Hazlewood of defendant's statement of its intentions. At that time, Gulf Coast Icee Corporation had not bought any machines, but an agreement had already been made between McGilvray and a customer in Corpus Christi for the delivery of fifteen machines to be installed by the customer in several of its drive-in grocery stores. Whereupon, in August, 1965, McGilvray, Klinck and Hazlewood met with the officers of defendant corporation and discussed their need for additional machines. Defendant then agreed to sell fifteen machines to McGilvray and his associates and one hundred machines to Hazlewood, which were later delivered to and accepted by them.

Defendant notified Hazlewood by letter dated September 7, 1965 that the dealer's agreement was cancelled. This information was then relayed by Hazlewood to McGilvray. On October 27, 1965, Hazlewood ordered an additional three hundred machines from defendant "under our present agreement". South Texas Icee Corporation, by letter dated October 28, 1965, ordered fifty machines through Hazlewood. Defendant, on November 2, 1965, declined to fill Hazlewood's order of October 27, 1965. Plaintiffs then filed suit wherein they alleged that the refusal by defendant on November 2, 1965 to supply Hazlewood with any more machines constituted a breach of an implied contract theretofore made between plaintiffs and defendant.

Defendant, among other defenses, denied that any agreement such as the one asserted by plaintiffs was ever made, and pleaded that any such agreement, if made, was unenforceable and void under the Statute of Frauds, and was illegal and void under the Texas Trust Act. In the alternative, defendant pleaded, that if such an agreement was in fact made, there was an accord and satisfaction, as there had been a novation that fully discharged defendant of all duties and obligations to plaintiffs when the fifteen machines were delivered to and accepted by plaintiffs.

The case was submitted on thirty special issues. The principal question presented by this appeal is whether or not the trial court committed reversible error in refusing to permit counsel for plaintiffs to re-argue Special Issue No. 1 to the jury. That issue, at the suggestion of counsel for plaintiffs and over defendant's eleven objections, first was submitted to the jury in the following language:

### "SPECIAL ISSUE NO. 1:

Do you find from a preponderance of the evidence that at a meeting in Dallas in March, April, or May, 1965, it was mutually agreed by Jerry McGilvray and Barney Kidd, whether expressed in words or not, that Jerry McGilvray and his associates would develop the Hazlewood territory from Laredo to Corpus Christi South by purchasing and then leasing therein ICEE Machines made by John E. Mitchell Company, and that Jerry McGilvray and his associates could purchase the necessary machines from John E. Mitchell Company through Hazlewood.

Answer 'Yes' or 'No'."

The case then proceeded to argument, and counsel for plaintiffs argued for a "yes" answer to the issue. He referred repeatedly and at length to a trip made by McGilvray to Dallas in March, April or May of "1965"; he told the jury of original discussions and arrangements made between McGilvray and Kidd, and that the claimed agreement was reached with defendant in March, April or May of "1965".

Counsel for defendant argued that such an agreement was never made, that there was no evidence that there was any such meeting in Dallas in March, April or May of "1965", and "the meeting that took place in Dallas, Texas, if any meeting did take place, took place in March, April or May of 1964, a year in advance of the time this question asked you about". He also told the jury that a "no" answer was required because, if for no other reason, under the

evidence, no such meeting was ever held in Dallas in "1965".

In the closing argument, counsel for plaintiffs again argued that Special Issue No. 1, as submitted, be answered "yes". The jury was then allowed to go home with instructions to return the next morning at 9 o'clock.

At some time after 9 a. m. the next day, but before the jury started deliberating, plaintiffs presented a motion to the court, whereby it was moved:

"(1) That the Court correct the obvious clerical error in Special Issue No. 1 by changing the figures '1965' to '1964' thereby correcting the clerical error in the Court's charge. After the correction of such clerical error such additional argument, if any, as the Court considers advisable should be allowed the parties."

The trial judge granted plaintiffs' motion by using a pen and striking from Special Issue No. 1, as originally submitted, the figures "1965" and inserting therein the figures "1964". He then told the jury that plaintiffs had filed a motion to "change" the date in Special Issue No. 1 from "1965" to "1964", and that the court had granted the motion. He further informed the jury that counsel for defendant had been allowed thirty minutes "in which to say whatever they wanted to say to the jury in this regard". Plaintiffs' counsel was not permitted additional argument. The jury answered "no" to Special Issue No. 1.

■  Plaintiffs, by appropriate points of error, attack the action by the trial court. They contend that the trial court erred in denying their counsel any time for additional argument of Special Issue No. 1, that such error "was of such magnitude and was so pervasive as to deny plaintiffs a fair trial", and that the judgment should be reversed and the cause remanded without attempting to analyze the record in detail in an effort to determine whether the error was calculated to cause and probably

did cause the entry of an improper judgment. They also say that such error "was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the court below". None of plaintiffs' contentions can be sustained. Plaintiffs suggested the wording of Special Issue No. 1 as originally submitted to the trial judge. They argued it to the jury in exactly the form suggested, asked the trial court to change it, and then submitted the question of additional argument thereon entirely to the court's discretion. Under those circumstances, assuming that it was error for the trial court to refuse plaintiffs the right to make additional argument, the burden was then on plaintiffs to show from the record as a whole that the alleged error committed by the trial court amounted to such a denial of their rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277 (1958); Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298, 301 (1956); Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367 (1954); Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953).

▪ Unquestionably, Special Issue No. 1 was the controlling issue in the case. That issue in both its original form and in its changed form inquired of the jury (1) whether or not "it was mutually agreed . . . that Jerry McGilvray and his associates would develop the Hazlewood territory from Laredo to Corpus Christi by purchasing and then leasing therein Icee Machines made by John E. Mitchell Company;" and (2) whether or not "Jerry McGilvray and his associates could purchase the necessary machines from John E. Mitchell Company through Hazlewood?" The jury was not asked to find whether or not a meeting was held in any particular year.

The substituting of the year "1965" for that of "1964" did not change, alter or affect either of the two controlling inquiries contained in Special Issue No. 1, as originally submitted, stated to the jury that a meeting had been held in "1965"; as changed, the jury was informed that the meeting had been held in "1964". The thrust of the issue was whether or not such an agreement was reached, not whether or not the asserted agreement was made in any certain year. In order for plaintiffs to prevail, it was essential that they obtain a fact finding that the alleged agreement was made. There is no evidence of any meeting between Jerry McGilvray and Barney Kidd in March, April or May, 1965. The record does not contain any instrument in writing evidencing any agreement of the type inquired about in Special Issue No. 1. The only evidence that the asserted agreement was made is found in the testimony of McGilvray, who stated that it was made with Barney Kidd at a meeting in Dallas in March, April, or May, 1964. Kidd denied that any such agreement was made at that or any other meeting.

The year that the meeting between McGilvray and Kidd occurred is not a critical issue in this case. We fail to see that plaintiffs could have improved their position before the jury by any re-argument of Special Issue No. 1. The issue, as finally submitted, admitted to the fact that the meeting was had in 1964, rather than in 1965. Further argument by plaintiffs' counsel was unnecessary. The issue, as changed, is more favorable to plaintiffs than that originally submitted, as there was evidence that a meeting did take place in 1964, but there was no evidence of such a meeting during the year 1965.

Plaintiffs rely primarily on Boler v. Coughran, 304 S.W.2d 290 (Tex.Civ.App. —San Antonio 1957, writ ref'd). That case is not in point. There, the controlling issue was whether or not plaintiff terminated the lease on a certain date. Initially, the special issue inquired of the jury as to whether or not plaintiff terminated the lease in question "on or about the 7th day

of June, 1955". After the jury had retired for deliberation, defendant's attorney advised the court that he had made a mistake in the date set out in the issue and that the date therein should be the "21st day of November, 1955". The judge then prepared, signed and sent to the jury an instruction that corrected the date appearing in the issue. Plaintiff was not given an opportunity to re-argue the issue. The jury found for defendant and judgment was entered on the verdict. The appellate court reversed the judgment, remanded the cause, and held that plaintiff should have been given an opportunity to argue the issue, as corrected, to the jury, as the correction of the issue presented a new matter based on different evidence from that which would support the former issue. Here, we have an entirely different situation. The controlling issue in the case at bar was whether or not an agreement was ever made, not whether or not the agreement was made at the 1964 meeting, the date of which was not, in effect, in dispute. Moreover, in the cited case, the mistake was made by defendant, who prevailed in the trial court. In the instant case, the plaintiffs, who lost in the trial court, made the mistake.

■ The jury further found by their answer to Special Issue No. 21 that Hazlewood and plaintiffs agreed to accept the additional one hundred fifteen machines in full satisfaction of any obligation that defendant might have had prior to July and August, 1965, to sell Icee Machines to plaintiffs. That answer constituted a finding of all of the elements of a valid accord and satisfaction. That finding is supported by the evidence. A valid accord and satisfaction, when specially pleaded and proved, as was done in this case, constitutes a bar to any action on the original contract, if there was, in fact, such a contract as contended by plaintiff. Ensley v. Spickard, 232 S.W.2d 780 (Tex.Civ.App.—Dallas 1950, writ ref'd); American General Life Insurance Company v. Copley, 428 S.W.2d 862 (Tex.Civ.App.—Houston 14th Dist. 1968, writ ref'd n. r. e.). Therefore,

even if the jury had answered "yes" to Special Issue No. 1, defendant would still have been entitled to a take nothing judgment because of the jury's answer to Special Issue No. 21.

■ It was error for the trial court to permit defendant's counsel an additional thirty minutes to re-argue Special Issue No. 1 and to refuse plaintiffs' counsel any time for re-argument of that issue, but that error in this case was harmless. It did not deprive plaintiffs of a fair trial. We conclude, in the light of the record as a whole, that the action by the trial judge did not amount to such a denial of the rights of plaintiffs as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, supra; Rivas v. Liberty Mutual Insurance Company, 480 S.W.2d 610 (Tex.Sup.1972); Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111 (1957).

Reversible error is not shown by the record. A correct judgment was rendered. We have carefully considered all of plaintiff's points of error and they are all overruled.

The judgment of the trial court is affirmed.