**ILLINOIS EMPLOYERS INSURANCE OF WAUSAU, Appellant,**

v.

**R. E. WILSON, et al., Appellees.**

No. 1452.

Court of Civil Appeals of Texas, Tyler.

July 2, 1981.

Rehearing Denied Aug. 28, 1981.

Charles Ways, Irving, Harvey L. Davis, Lancaster Smith Law Office, Dallas, for appellant.

Les Mendelsohn, Branton & Mendelsohn, San Antonio, for appellees.

MOORE, Justice.

This is a suit brought by R. E. Wilson, appellee, against Illinois Employers Insurance Company of Wausau, appellant, for worker's compensation benefits.

On July 18, 1977, while working for East Texas Poultry Supply, Wilson sustained an injury to his left leg. The accident occurred while he was installing poultry equipment at a farm located between Shelbyville and Center, Texas, when he stepped down off a ladder and struck his shin on the corner of a poultry feeder. As a result he received a laceration approximately three to four inches long and a quarter of an inch deep near the shin bone. The injury occurred at approximately four o'clock, and at five o'clock that afternoon he went to a doctor who dressed the wound, gave him a shot and some pills. He did not work for the next two days on the advice of the doctor. When he returned to work he went back to his regular job of installing poultry equipment. After returning to work, he continued to have problems with his injury due to the fact that he would hit his shin while climbing up and down a ladder, thereby aggravating his injury causing swelling and pain. As a result, his employer changed the nature of his work from installing equipment to working in the warehouse and waiting on customers. On August 16, 1977, appellee went to another doctor who gave him a shot and dressed his wound. Upon his second visit to this doctor, the doctor advised him not to work for two weeks. After being off for two weeks he went back to work in the warehouse. Due to pain and swelling in the leg he was off from work on several occasions. Finally in August of 1978 he informed his employer that he was going to have to quit work until his leg got better.

In October of 1978 appellee called his brother-in-law in San Antonio who became concerned about his leg and who went to Center, Texas, and picked him up and took him to see Dr. Howard Crawford in San Antonio, Texas. After examining appellee on November 1, 1978, Dr. Crawford admitted him to Methodist Hospital in San Antonio. According to Dr. Crawford, appellee's primary complaint was that he had pain in his left big toe. Appellee admitted that he told the doctor that a spool of barbed wire rolled over his left big toe about four or five months before he went to Dr. Crawford. He denied that the incident caused any injury to his toe. Dr. Crawford testified appellee told him his foot had gotten progressively worse since the spool of wire rolled over his toe. He further testified that appellee had a history of previous myocardial infarction in 1975 indicating he had arteriosclerosis, or hardening of the arteries. Dr. Crawford's physical findings showed the primary problem to be with appellee's left foot. There was no pulse present in his left foot, the tip of his left great toe was gangrenous and the skin on his left foot was discolored and "shiny." After further tests were made it was found that appellee's artery in his left thigh was totally blocked, and as a result, the circulation in his lower left leg and foot was substantially impaired.

In order to remedy the blockage Dr. Crawford performed an arterial bypass. He also performed a left lumbar sympathectomy which resulted in the removal of a portion of the nervous system in order that the blood vessels in that extremity would dilate so as to improve healing in the foot. Immediately after the surgical procedures were performed, appellee had a pulse in his left foot but shortly thereafter the pulse disappeared because the artery in the thigh occluded. Surgery was performed again that day wherein the vein graft was examined, the clots were cleaned out and as a result pulse was again obtained through the vein graft. The vein graft, however, was not successful and one week later Dr. Crawford, upon re-examining appellee, informed him that his leg would have to be amputat-ed below the knee. Appellee was re-admitted to the hospital and on January 12, 1979, Dr. David Wolfe amputated the leg about four inches below the knee. There were no post-operative complications and appellee was released on January 19, 1979. Appellee, thereupon, brought this claim for worker's compensation benefits.

The cause was tried before a jury which found that the injury sustained by appellee on July 18, 1977, to his left leg was a producing cause of total loss of use of his left foot; the beginning date of the total loss of use was January 12, 1979; and that the total loss of use in the left foot is permanent. The jury also found that medical care was reasonably required as a result of the injury, that appellant insurance company failed to furnish within a reasonable time said medical care, and that appellee incurred expenses in the amount of $10,351.92 for such medical care which appellant failed to furnish within a reasonable time. The trial court entered judgment in accordance with the verdict, from which appellant insurance company duly perfected this appeal.

It is the contention of appellant insurance company that the trial court erred in overruling its motion for directed verdict and motion for new trial because there was no probative evidence produced in the trial court that the injury sustained by appellee on July 18, 1977, was a producing cause of the loss of use of his left foot. It is argued by appellant that the medical expert testimony adduced in the trial does not support the allegation that the injury was a producing cause and that the testimony of appellee that the injury was a producing cause has no probative value because he was not qualified to give an opinion on the producing cause of loss of use of his foot. We are of the opinion that this point should be sustained.

■ Under the Worker's Compensation Act the claimant is required to prove that the injury for which he seeks compensation arose out of his employment. *Parker v. Employers Mutual Liability Ins. Co. of Wis-*

*consin*, 440 S.W.2d 43, 45 (Tex.1969). Further, when the claimant alleges that the injury includes such diseases or infections as naturally result therefrom, there must be proven a causal relationship or connection between the job-related occurrence and the ultimate disability. *Scott v. Liberty Mut. Ins. Co.*, 204 S.W.2d 16, 18 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.).

■ One method by which producing cause is proven is by lay testimony. However, the adequacy of lay testimony to prove causation has been limited to those cases where the general experience of, or commonsense of, men is such that they can anticipate one event will follow another. *Griffin v. Texas Employers' Ins. Assoc.*, 450 S.W.2d 59, 61 (Tex.1969); *Parker v. Employers Mutual Liability Ins. Co.*, supra at 46. In order for lay testimony to be sufficient to prove causation, the testimony must prove at least that the injury in reasonable probability caused the claimed result. *Griffin v. Texas Employers' Ins. Co.*, supra.

Appellee, after testifying as to his injury, the treatment of it, and the effect which it had on him, was asked:

Q. Mr. Wilson, what in your mind caused your left foot and your left shin to swell and finally caused it to be amputated?

MR. WAYS: Well, Your Honor ___

A. (Interposing) The cut on my left shin.

MR. HOEKSTRA: Don't answer when this man makes an objection.

MR. WAYS: Your Honor, we would have to object. He has just asked a question that would require a person to have medical training and be an expert because it was as to cause and that involves any diseases and a long history that is even tough for a doctor much less for a witness that hasn't had any medical training. He hasn't yet been shown to be an expert that could give an opinion.

THE COURT: State your question again.

MR. HOEKSTRA: What in his mind caused the left foot and shin to swell and finally caused it to be amputated, what does he relate it to, and I would like to be heard in response.

THE COURT: Objection overruled.

Q. Mr. Wilson, let me repeat the question. In your mind, sir, and knowing that you are not a doctor, that your are an ordinary poultry, chicken equipment installer, what in your mind caused your left foot and shin to swell and finally caused it to be amputated?

A. The injury to my shin.

Q. What would you be doing now if you had not cut a gash in your shin?

A. Working for East Poultry Supply.

■■ We have examined the record in this cause and believe that the testimony of appellee as to causation was not probative as to this issue of producing cause. We fail to see how a layman would be qualified to testify that a laceration of the nature suffered by appellee would impair the circulatory system to such an extent that it caused the loss of the foot. The complexity of the disease of which appellee was suffering and the length of time between the injury and the loss of his foot make this case one wherein lay testimony alone is not adequate to prove the necessary causal connection. *See Western Casualty and Surety Co. v. Gonzales*, 518 S.W.2d 524 (Tex.); and *Tyler Mirror & Glass Co. v. Simpkins*, 407 S.W.2d 807 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.). Consequently we do not believe appellee's testimony, standing alone, was sufficient to raise an issue for the jury on the issue of causation.

■ Another method of proving causation is by the use of medical expert opinion. *Parker v. Employers' Mutual Liability Ins. Co. of Wisconsin*, supra. "Where expert testimony is relied upon to establish causation in a worker's compensation case, expert medical testimony can enable a plaintiff's case to go to the jury if there is testimony of a 'reasonable probability' of a causal connection between the act and the present injury." *Stodghill v. Texas Employers Ins. Asso.*, 582 S.W.2d 102, 104–5 (Tex.1979). Generally, the medical expert, when testify-

ing, is not required to use the exact words "reasonable medical probability." It is sufficient that the substance of the expert's testimony is that it was in "reasonable medical probability." However, when the medical expert is uncertain, or does no more than acknowledge that everything is possible, there exists a gap in the proof which may be closed only by the doctor's deciding that the chances weigh more heavily in favor of the casual relationship. *Western Casualty and Surety Co. v. Gonzales*, supra 518 S.W.2d at 526.

In an effort to establish that the injury was a producing cause of the loss of his left foot, appellee offered the deposition testimony of Dr. Crawford. The doctor was questioned on his examination and treatment of appellee, including the artery by-pass operation performed by him, the failure of the artery by-pass and the subsequent amputation of appellee's left leg below the knee. Upon the issue of causation, the following testimony was developed:

Q. Doctor, if we would assume that, at the same time, that this man had an arteriosclerotic condition which, I think, Mr. Ways has attempted to imply, would you agree, with me, Doctor, that this lower leg injury, as described in Deposition Exhibit 8, constituted, in addition to damage or harm to the physical structure of the body, it would also constitute an aggravation or acceleration or incitement of a previously existing condition?

A. I don't—You know, I don't know what you mean by that.

Q. Okay. Did it make worse, any condition that may be previously existing?

A. I can't answer that. You know, I can't—I can't give any method by which it would make his arteriosclerosis worse. You're talking about the injury to his leg.

The other—the conerse (sic) is true. The arteriosclerosis would make him slow to heal his leg.

Q. Okay.

A. But the injury, I can't say would make the arteriosclerosis worse.

\* \* \* \* \* \*

Q. Now, with that idea, Doctor, of producing cause, and referring, both to Doctor Wolfe's report, your histories, your summaries, and Doctor Mallory's report, and emphasizing the swelling of the left leg, since the initial injury, would you agree with me, Doctor, that this injury to the lower leg was a—not the—but a producing cause of the condition for which you treated R. F. Wilson?

A. I don't think I can answer that. I can't say it was not a producing cause with him having a problem with his leg since the time of the injury.

On the other side of the coin, since he had a second injury,—

MR. WAYS: (Interposing) The other side of the coin, there is no 'on'.

MR. HOEKSTRA: I am sorry.

The other side of the coin, since he had a second injury I cannot say it was a producing cause. I certainly cannot say it was not a producing cause. I certainly cannot say it was not a producing cause with the chronic problem of his leg since the time of the injury, which is what he told me.

\* \* \* \* \* \*

Q. Okay. Doctor, the law, also, puts the burden of the plaintiff to be able to show, beyond the idea of might. And we have to talk in terms of probability.

So my question, then: Assuming those facts which you just listed, was—I'm not asking you to tell me whether they are true, the facts you are assuming. I'm just saying: Assuming those to be the case, was the injury, described to the lower left leg, one of the things that led to his condition for which you treated him?

A. Again, all I can tell you in answer is it could be. I can't say whether it was or wasn't.

 The testimony shows that Dr. Crawford was uncertain as to whether the injury to appellee's leg was a producing cause of his present condition. The nearest the doctor came to testifying that in reasonable medical probability the injury was a producing cause is where he stated that he

could not testify that it was not a producing cause. This testimony, however, is equivalent to saying that it was a possibility and is not evidence that it was a producing cause in reasonable medical probability. The doctor stated, in effect, that he could not testify that the chances weighed more heavily in favor of causation. We are of the opinion that the testimony of Dr. Crawford is not of sufficient probative force to raise an issue for the jury upon the issue of causation. In the absence of any evidence of probative force to establish the issue of causation, appellant was entitled to an instructed verdict.

Accordingly, the judgment of the trial court is reversed and rendered that appellee take nothing.