In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00202-CR


______________________________




JESSIE LANE HITCHCOCK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 02F0157-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 While patrolling a Riverplace Apartments parking lot in Hooks, Texas, around 1:30 a.m. on
October 21, 2001, officers noticed three people sitting in a parked car with the lights out. Having
earlier received reports of suspicious activity in the area, the officers decided to investigate. One of
the officers, David Gipson, approached the car and knocked on the front passenger's side window. 
When the window was lowered, Gipson detected smoke and the burning smell of marihuana. He
asked the occupants to step out of the vehicle and, when they complied, the back-seat passenger fled. 
Gipson's partner pursued the man, leaving Gipson with the two front-seat passengers, Jessie Lane
Hitchcock and a female. 

 Preceding his search of the vehicle, Gipson handcuffed Hitchcock and placed him, along with
the female passenger, in the back seat of his patrol car. During his search, Gipson discovered
marihuana residue in the ashtray and a bottle of cognac under the passenger's seat. Following his
search, Gipson removed Hitchcock and the other passenger from the patrol car and began searching
them based on his findings in the car. Given the strong odor of marihuana in the car, Gipson
believed he had probable cause to search Hitchcock and the remaining passenger for illegal drugs. 
Gipson performed a pat-down search for weapons and then reached into Hitchcock's pockets. After
recovering from Hitchcock's left front pants pocket a gum wrapper with a white, rock-like substance
inside, which he believed to be crack cocaine, Gipson arrested Hitchcock for possession of a
controlled substance. 

 After pleading guilty to possession of a controlled substance, Hitchcock was sentenced to two
years in state jail (probated for five years) and assessed a $750.00 fine. On appeal, Hitchcock
contends the trial court erred in denying his motion to suppress, alleging law enforcement officials
violated his constitutional and statutory rights against unreasonable search and seizure. 

Analysis

 The Fourth Amendment to the United States Constitution protects the right to be free of
unreasonable searches and seizures. U.S. Const. amend. IV; United States v. Place, 462 U.S. 696,
700 (1983). Article I, Section 9 of the Texas Constitution similarly provides that people "shall be
secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches,
and no warrant to search any place, or to seize any person or thing, shall issue without describing
them as near as may be, nor without probable cause, supported by oath or affirmation." Tex. Const.
art. I, § 9. In a hearing on a motion to suppress evidence, a defendant bears the initial burden of
proof to demonstrate that the search and seizure occurred without a warrant. Bishop v. State, 85
S.W.3d 819, 821 (Tex. Crim. App. 2002). Once the defendant demonstrates that a warrantless
search occurred, the burden then shifts to the State to prove a warrant existed or an exception, under
either the Fourth Amendment to the United States Constitution or Article I, Section 9 of the Texas
Constitution, justifies the warrantless search given the totality of the circumstances. State v.
Steelman, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002); Bishop, 85 S.W.3d at 822. If clear and
convincing proof is not offered before the trial court, then the illegally obtained evidence may not
be admitted at trial. See State v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997). In the case
at bar, the parties agree a warrantless search occurred; therefore, the State must meet the burden of
proving that an exception to the Fourth Amendment justified the search of Hitchcock's person.

 A. Initial Detention

 An officer may conduct a brief investigative detention, or Terry stop, if he or she "has
reasonable suspicion to believe that an individual is involved in criminal activity." Terry v. Ohio,
392 U.S. 1, 21 (1968); Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Given the
totality of the circumstances as distinguished from the facts in Steelman, it is reasonable to
conclude-and Hitchcock concedes-that Gipson articulated facts sufficient to support a reasonable
suspicion that Hitchcock and the remaining front-seat passenger were engaged in criminal activity. 
Cf. Balentine, 71 S.W.3d at 768-69 (finding, under totality of circumstances, officer had reasonable
suspicion to stop suspect).

 B. Terry Search

 A police officer may conduct a pat-down search of a suspect's outer clothing, even in the
absence of probable cause, if the officer reasonably believes that the suspect is armed and dangerous
to the officer or to others in the area. Terry, 392 U.S. at 27, 29; Carmouche v. State, 10 S.W.3d 323,
329 (Tex. Crim. App. 2000). "The purpose of this limited search is not to discover evidence of
crime, but to allow the officer to pursue his investigation without fear of violence . . . ." Adams v.
Williams, 407 U.S. 143, 146 (1972); see also Carmouche, 10 S.W.3d at 329 (citing Wood v. State,
515 S.W.2d 300, 306 (Tex. Crim. App. 1974)). "The officer need not be absolutely certain that an
individual is armed; the issue is whether a reasonably prudent person would justifiably believe that
he or others were in danger." Balentine, 71 S.W.3d at 769 (citing O'Hara v. State, 27 S.W.3d 548,
551 (Tex. Crim. App. 2000)). 

 Here, the officer testified he performed a Terry search to make sure there were no weapons. 
Given that the search occurred in the early hours of the morning, in an area about which officers had
received reports of suspicious activity, and that one of the occupants of Hitchcock's car had fled the
scene only moments earlier, it is not unreasonable that a prudent person would find Gipson's initial
pat-down search of Hitchcock's outer clothing justified. The more significant issue is whether
Gipson's search of Hitchcock's pants pocket was justified.

 C. Search of the Pocket

 If a search goes beyond what is necessary to determine whether the suspect is armed, then
the fruits of that search are illegal and must be suppressed. Carmouche, 10 S.W.3d at 330 (citing
Minnesota v. Dickerson, 508 U.S. 366, 373 (1993)). One exception, however, is when, during a
lawful pat-down search, an officer feels an object "whose contour or mass makes its identity
immediately apparent." Dickerson, 508 U.S. at 375. In such cases, "no additional privacy interest
is implicated by the seizure of an item whose identity is already plainly known through the officer's
sense of touch." Carmouche, 10 S.W.3d at 330 (citing Dickerson, 508 U.S. at 377). Hitchcock
correctly contends, however, that because Gipson admitted he did not feel the gum wrapper
containing the cocaine through Hitchcock's pants pocket during the initial pat-down search for
weapons, the plain feel exception to the Fourth Amendment could not justify the officer's more
invasive search. 

 Although the facts in this case suggest that this exception does not apply, the State presents
two alternative arguments to justify the search: (1) inevitable discovery and (2) exigent
circumstances.

 1. Inevitable Discovery

 The State contends the federal rule of inevitable discovery applies in this case because
Hitchcock's motion to suppress was based solely on a violation of his Fourth Amendment rights. 
The record, however, does not support the State's contention. In his motion to suppress, Hitchcock
claimed the actions of the police violated his constitutional and statutory rights under (1) the Fourth,
Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (2) Article I, Section 9
of the Texas Constitution; and (3) Article 38.23 of the Texas Code of Criminal Procedure. 
Hitchcock's motion clearly includes claims that the search violated both federal and state law. 
Hitchcock did not affirmatively waive his challenge under the Texas Constitution at the pretrial
hearing, and he again asserted his rights thereunder in his brief to this Court. In addition, Hitchcock's
counsel did not waive the Texas law claim by not directly referencing the Texas Constitution in his
closing argument. 

 "The inevitable discovery doctrine renders the exclusionary rule inapplicable to otherwise
suppressible evidence if said evidence would have been inevitably discovered by lawful means." 
Henderson v. State, 82 S.W.3d 750, 753 n.3 (Tex. App.-Corpus Christi 2002, pet. ref'd) (citing
United States v. Grosenheider, 200 F.3d 321, 328 n.8 (5th Cir. 2000)). A majority of the Texas
Court of Criminal Appeals has held that the inevitable discovery doctrine violates Article 38.23 of
the Texas Code of Criminal Procedure (also known as the Texas exclusionary rule). State v.
Daugherty, 931 S.W.2d 268, 271-73 (Tex. Crim. App. 1996); see also Roquemore v. State, 60
S.W.3d 862, 871 n.12 (Tex. Crim. App. 2001) (noting that the Texas exclusionary rule does not
contain the inevitable discovery exception). In Daugherty, the court reasoned that the decision of
whether evidence has been illegally obtained is a separate consideration from whether the Texas
exclusionary rule should apply. Daugherty, 931 S.W.2d at 272. The Daugherty court criticized its
dissenters for believing that evidence "obtained in violation of" the law is admissible unless the
Fourth Amendment's exclusionary rule would operate to exclude it. Id. at 272-73. Evidence that
might be admissible under an exception to the Fourth Amendment, such as inevitable discovery,
might nonetheless be inadmissible under Texas' stricter exclusionary rule. Id.

 In 2002, the Fourteenth Court of Appeals rejected a claim by the State that the fruits of an
illegal search were nonetheless admissible because the State had secured a search warrant. Price v.
State, 93 S.W.3d 358 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd). Without specifically
invoking the term "inevitable discovery," the State argued that a "casual connection" between the
evidence sought to be suppressed and the allegedly illegal entry was too tenuous to support
suppression because the officers had a valid search warrant. Id. at 370. Such a warrant, though
legally obtained, was executed in violation of the Fourth Amendment, and its execution was directly
connected with the illegal entry and confiscation of the contraband. Id. at 371. Because there was
no independent, subsequent search pursuant to a valid warrant, the court of appeals held the trial
court erred by denying Price's motion to suppress under the theory that inevitable discovery would
have cured the illegal search. Id. at 372.

 In the present case, Gipson testified he searched Hitchcock and seized the cocaine before
placing Hitchcock under arrest. Because there is no evidence in the record that might attenuate the
connection between the discovery and the prearrest, invasive search, the State's claim of inevitable
discovery pursuant to a search incident to arrest is unpersuasive.

 2. Exigent Circumstances

 The State's final argument is that Gipson was justified in conducting the more invasive search
because either Hitchcock or the front-seat passenger could destroy any illegal narcotics still in their
possession during the time it would take police to obtain a warrant. "[T]he law is well settled in this
jurisdiction that when an officer has probable cause to believe that an offense is being committed
in his presence . . . he has the right to take reasonable measures to insure that the incriminating
evidence is not destroyed and that reasonable physical contact is one of these measures." Hernandez
v. State, 548 S.W.2d 904, 905 (Tex. Crim. App. 1977) (citations omitted); see also Lewis v. State,
56 S.W.3d 617, 623 (Tex. App.-Texarkana 2001, no pet.) (noting community's interest in preserving
evidence is considerable; police justified in use of gastric lavage without first obtaining warrant).

 Gipson testified that he believed the occupants of the car had been smoking marihuana based
on the smoke and strong odor of marihuana emitted from the car's window. When Gipson's
subsequent search of the car produced alcohol but no usable quantity of drugs, he reasonably
deduced that Hitchcock and the female passenger might have concealed marihuana on their persons.
"Law enforcement officers are permitted to draw logical inferences and make intelligent deductions
based on a totality of the circumstances." Small v. State, 977 S.W.2d 771, 774 (Tex. App.-Fort
Worth 1998, no pet.) (citing Jackson v. State, 745 S.W.2d 4, 10 (Tex. Crim. App. 1988)).

 In light of the totality of the circumstances in this case, it is clear Gipson had probable cause
to believe that any evidence of drugs on Hitchcock's person could have been destroyed during the
time it would have taken to obtain a search warrant. Cf. Small, 977 S.W.2d at 774 (explaining that
circumstances making procurement of warrant impractical include need to prevent imminent
destruction, removal, or concealment of property intended to be seized). Not only is the odor of
marihuana sufficient to constitute probable cause to search a defendant's person, Ross v. State, 486
S.W.2d 327, 328 (Tex. Crim. App. 1972); Small, 977 S.W.2d at 774; Hernandez v. State, 867
S.W.2d 900, 907 (Tex. App.-Texarkana 1993, no pet.), but also the need for preservation of
evidence was considerable, and the physical intrusion experienced by Hitchcock was minimal. There
was no error in denying Hitchcock's motion to suppress.

 We affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 20, 2003

Date Decided: September 19, 2003


Publish



urred since 1979, interest on that judgment, and attorney's fees. On
September 4, 1996, the trial court made detailed findings of fact and found that Wausau
had unsuccessfully argued before the Board in 1979 that Jones' heart infection was not
caused by the infection from his cut finger. The court concluded that "[t]he three prior
awards of the Industrial Accident Board issued in 1978 and 1979 are res judicata and
operate as a bar to Defendant Wausau's efforts to relitigate its own liability for payment of
medical expenses for treatment of the heart condition . . . ." 
          Wausau's appeal to the First District Court of Appeals then moved forward. The
parties, however, reached a settlement agreement, and the First District Court of Appeals
dismissed the appeal. 
          Since 1997, the Commission has entered seven orders for Wausau to pay Jones'
medical expenses. Wausau appealed each of these Commission orders in various courts.


 
All seven of these appeals were eventually consolidated into this case and constitute the
subject of the summary judgment proceedings below, and now, this appeal. 
Summary Judgment Proceedings
          On May 28, 2002, Wausau moved for summary judgment on the ground the expert
report it provided established that Jones' claims for heart-related medical expenses were
not medically necessary to cure or relieve him from the effects of the finger injury he
sustained in 1978. Alternatively, Wausau moved for partial summary judgment on Jones'
affirmative defenses pled in his answer of res judicata and collateral estoppel. Wausau
contended the res judicata and collateral estoppel defenses were barred by the workers'
compensation law, specifically Tex. Rev. Civ. Stat. Ann. art. 8307, § 5 (Vernon 1967),
repealed by, Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, 1990 Tex. Gen. Laws 1. The
hearing for Wausau's motion for summary judgment was set for July 19, 2002. 
          Jones mailed a response to Wausau's motion for summary judgment, including a
cross-motion for summary judgment, July 12, 2002. The clerk's file stamp indicated receipt
July 15, 2002. Jones based both his response to Wausau's motion for summary judgment
and his own cross-motion for summary judgment on the contention Wausau was barred by
res judicata and collateral estoppel from contesting whether his heart ailment was
compensable. On the same date, Jones also filed a counterclaim against Wausau for
breach of the covenant and duty of good faith and fair dealing. The day before the hearing,
Wausau filed a reply to Jones' response, contending Jones' cross-motion for summary
judgment and supporting proof were untimely. Wausau also contended Exhibit D of Jones'
summary judgment proof, consisting of letters from Jones' treating physicians, was hearsay
and should not be considered. 
          The hearing took place July 19, 2002, as scheduled, and the trial court heard
arguments from both sides and took the matter under advisement. On August 1, 2002,
while the matter was still under advisement in the trial court, Jones filed a motion for
continuance for additional time to cure the alleged defects in his summary judgment proof. 
The trial court never ruled on this motion. On September 6, 2002, the trial court granted
Wausau's motion for summary judgment and reversed the Commission awards. Jones
moved for a rehearing. On November 15, 2002, the trial court denied Jones' motion for
rehearing and sustained Wausau's objections to Jones' cross-motion for summary judgment
and summary judgment proof. 
Summary Judgment Response and Cross-Motion for Summary Judgment
 
          Before reaching the merits of Jones' appeal, we must determine whether his
response and cross-motion for summary judgment were properly before the trial court and,
therefore, properly before this Court. 
          The certificate of service reflects that Jones' response to Wausau's motion for
summary judgment, which embodied his cross-motion for summary judgment, was mailed
July 12, 2002. The clerk's file stamp reflects receipt July 15, 2002. The Rules of Civil
Procedure provide: "Except on leave of court, the adverse party, not later than seven days
prior to the day of hearing may file and serve opposing affidavits or other written response."
Tex. R. Civ. P. 166a(c). In Clendennen v. Williams, 896 S.W.2d 257, 259 (Tex.
App.—Texarkana 1995, no writ), this Court held that Tex. R. Civ. P. 5 ("mailbox rule")
applies to filing a response to a summary judgment motion. Rule 5 provides, in pertinent
part:          If any document is sent to the proper clerk by first-class United States
mail in an envelope or wrapper properly addressed and stamped and is
deposited in the mail on or before the last day for filing same, the same, if
received by the clerk not more than ten days tardily, shall be filed by the clerk
and be deemed filed in time.
 Pursuant to Tex. R. Civ. P. 166a, Jones timely filed his response to Wausau's motion for
summary judgment set for hearing July 19, 2002, within seven days of the hearing, by
mailing his response to the motion July 12, 2002. See Clendennen, 896 S.W.2d at 259;
Geiselman v. Cramer Fin. Group, Inc., 965 S.W.2d 532, 535 (Tex. App.—Houston [14th
Dist.] 1997, no pet.). Jones' response to Wausau's motion for summary judgment was
properly before the trial court. 
          The motion was not, however, timely as a cross-motion for summary judgment. In
the Rules of Civil Procedure, a motion for summary judgment is governed by a different time
table from a response. Rule 166a provides, "Except on leave of court, with notice to
opposing counsel, the motion and any supporting affidavits shall be filed and served at least
twenty-one days before the time specified for hearing." Tex. R. Civ. P. 166a. The twenty-one-day notice requirement is strictly enforced by the courts. Lewis v. Blake, 876 S.W.2d
314, 316 (Tex. 1994). The hearing on Wausau's motion for summary judgment was set for
July 19, 2002, and Jones' cross-motion was untimely submitted July 12, 2002, seven days
before the hearing. Wausau objected to the timeliness of the cross-motion both by written
response and orally at the summary judgment hearing. Leave of court to file the motion late
was not obtained, and the trial court specifically sustained Wausau's objection to the cross-motion for summary judgment. We will therefore consider Jones' July 12, 2002, motion as
a response to the motion for summary judgment and nothing more. 
Standard of Review
          The summary judgment movant has the burden of establishing by competent
summary judgment proof that, as a matter of law, there is no genuine issue of material fact
as to one or more essential elements of the plaintiff's cause of action. Gibbs v. Gen. Motors
Corp., 450 S.W.2d 827, 828 (Tex. 1970). When a plaintiff moves for summary judgment,
the plaintiff must show entitlement to prevail on each element of the cause of action. Al's
Formal Wear v. Sun, 869 S.W.2d 442, 444 (Tex. App.—Houston [1st Dist.] 1993, writ
denied). The plaintiff must produce evidence sufficient to support an instructed verdict at
trial. Id. The standards in reviewing summary judgment evidence are: (1) the movant for
summary judgment has the burden of showing that there is no genuine issue of fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether there is a material
fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken
as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and
any doubts resolved in its favor. Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 800
(Tex. 1994). If the party opposing a summary judgment relies on an affirmative defense,
such party must come forward with summary judgment evidence sufficient to raise an issue
of fact on each element of the defense to avoid summary judgment. Brownlee v. Brownlee,
665 S.W.2d 111, 112 (Tex. 1984).
Summary Judgment 
          Wausau contends that Exhibit V of its motion for summary judgment, the affidavit of
William Owen, M.D., is uncontroverted and establishes that Jones' heart-related medical
expenses incurred since 1997 are not reasonably necessary to treat the compensable finger
injury he sustained in 1978. Owen states Jones' compensable finger injury, resulting in an
infection of "staphylococcal aureus" did not cause his subsequent bacterial endocarditis,
which showed an infection of "staphylococcal epidermis." He states that, in all reasonable
medical probability, the infection that caused the bacterial endocarditis was not caused by
the cut finger. He concludes that Jones developed bacterial endocarditis from his episode
of pneumonia or that the endocarditis arose from some common environmental source
unrelated to his finger injury March 20, 1978. Wausau's motion for summary judgment did
not contend the medical expenses awarded to Jones since 1997 were unreasonable,
unnecessary, or unrelated to his heart ailment. 
          Jones contends, first and foremost, that the issue of whether his heart ailment was
compensable and caused by his work-related finger injury has already been litigated and
decided by the Board and the 270th Judicial District Court. In the alternative, Jones
contends the trial court erred in sustaining Wausau's objection to Exhibit D of his response
to Wausau's motion for summary judgment, which he contends raised a fact issue on
causation. Exhibit D of his response includes letters from several of Jones' treating
physicians, who conclude that the most likely source of the infection to Jones' heart was the
cut to his finger. He also contends the trial court erred in granting Wausau's motion for
summary judgment without allowing him the opportunity to amend the affidavits to correct
any defects. 
Res Judicata and Collateral Estoppel 
          Because Jones seeks benefits for an injury that occurred in 1978, this case is
governed by the Workers' Compensation Act in effect at the time of his injury. See Hartford
Underwriters Ins. Co. v. Burdine, 34 S.W.3d 700, 702 (Tex. App.—Fort Worth 2000, no
pet.); see also Tex. Rev. Civ. Stat. Ann. arts. 8306, 8307, 8309 (Vernon 1967), repealed
by Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, 1989 Tex. Gen. Laws 1 (effective
Jan. 1, 1991) (current version at Tex. Lab. Code Ann. § 401.001, et seq. (Vernon 1996 &
Supp. 2004)). Under the former workers' compensation law, for an injury to be
compensable, it must be proven that there exists a causal relationship or connection
between the job-related injury and the ultimate disability. Garcia v. Tex. Indem. Ins. Co.,
146 Tex. 413, 209 S.W.2d 333, 336 (1948); Ill. Employers Ins. of Wausau v. Wilson, 620
S.W.2d 169, 171–72 (Tex. Civ. App.—Tyler 1981, writ ref'd n.r.e.). As this Court stated,
when it "reasonably appears from all facts and circumstances that there is a causal
connection between the conditions under which work is required to be done and the
resulting injury, such injury arises out of the employment." Lesco Transp. Co. v. Campbell,
500 S.W.2d 238, 241 (Tex. Civ. App.—Texarkana 1973, no writ). 
          When a claimant suffers a compensable injury, the Act provides that all medical
services reasonably required to cure and relieve the claimant from the natural effects
resulting from an injury will be provided. Tex. Rev. Civ. Stat. Ann. art. 8306, § 7; see
generally Peeples v. Home Indem. Co., 617 S.W.2d 274 (Tex. Civ. App.—San Antonio
1981, no writ). These medical services are to be provided both at the time of the injury and
at any time thereafter for the remainder of the claimant's life, if required to relieve the
claimant from the effects naturally resulting from the injury. Tex. Rev. Civ. Stat. Ann. art.
8306, § 7; art. 8307, § 5. The employee's right to recovery for medical expenses is
dependent on a showing they are reasonable and necessary. See Select Ins. Co. v. Patton,
506 S.W.2d 677 (Tex. Civ. App.—Amarillo 1974, writ ref'd n.r.e.). Testimony by the treating
physician that the charges are reasonable is sufficient to establish that fact. Id. 
          Jones claims the Board awards in 1979 and the 270th Judicial District Court
judgment in 1996 decided the issue of whether his bacterial heart condition, which required
valve replacement surgery, was a compensable injury caused by his job-related finger
injury. 
          Res judicata is a general term for two related rules concerning the conclusive effects
of final judgments. The rules are: (1) claims preclusion, also known as res judicata; and
(2) issue preclusion, also known as collateral estoppel. Barr v. Resolution Trust Corp., 837
S.W.2d 627, 628 (Tex. 1992). Res judicata prevents the relitigation of a claim that has
been finally adjudicated, as well as all related matters that reasonably could and should
have been litigated in the prior suit. Res judicata is only applicable where there is: (1) a
prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties
or those in privity with them; and (3) a second action based on the same claims as were
raised or could have been raised in the first action. McGee v. McGee, 936 S.W.2d 360, 363
(Tex. App.—Waco 1996, writ denied).  
          The Texas Supreme Court, in Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816,
818 (Tex. 1984), established the prerequisites to collateral estoppel as follows: (1) the facts
sought to be litigated in the first action were fully and fairly litigated in the prior action;
(2) those facts were essential to the judgment in the first action; and (3) the parties were
cast as adversaries in the first action. The court has since removed the third requirement
of mutuality. Eagle Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex. 1991) (finding
"it is only necessary that the party against whom the plea of collateral estoppel is being
asserted be a party or in privity with a party in the prior litigation"). Issue preclusion, or
collateral estoppel, prevents the relitigation of particular issues already resolved in a prior
suit. Lone Star Partners v. Nationsbank Corp., 893 S.W.2d 593, 597 (Tex.
App.—Texarkana 1994, writ denied). The inquiry must always be as to the point or question
actually litigated and determined in the original action, not what might have been litigated
and determined. See Getty Oil Co. v. Ins. Co. of N. Am., 845 S.W.2d 794, 800 (Tex. 1992). 
The doctrine of collateral estoppel or issue preclusion is designed to promote judicial
efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by
precluding the relitigation of issues. Sysco Food Servs., Inc., 890 S.W.2d at 801. Jones'
contention that the Board and the 270th Judicial District Court decided the issue on the
compensability of his heart ailment is properly analyzed under the doctrine of collateral
estoppel, or issue preclusion.
          The 1979 Board Awards
          From a review of the summary judgment evidence, it is reasonable to conclude that
the 1979 Board fully and fairly litigated the issue of whether Jones' heart ailment was a
compensable injury caused by his cut finger. Jones points out it is illogical the Board would
order Wausau to pay $91.00 per week in compensation for 14-5/7 consecutive weeks for
a minor cut finger. The logical inference, Jones suggests, is that the awards were for the
heart ailment. Jones also contends the order, which leaves future medical expenses open
for his lifetime, is further evidence the Board determined the heart ailment was
compensable. In addition, the record is clear that the 1979 Board ordered Wausau to pay
the medical expenses of Rickman, a cardiologist who was Jones' treating physician for the
heart valve replacement surgery. From this evidence, we conclude that the 1979 Board
considered and determined that Jones' heart infection was a compensable injury caused
by the infection to his cut finger. See Middlebrook v. Tex. Indem. Ins. Co., 112 S.W.2d 311,
312–13 (Tex. Civ. App.—Dallas 1937), writ dism'd w.o.j., 114 S.W.2d 226 (Tex. 1938)
(finding awards of Industrial Accident Board, like judgments, must be liberally construed so
as to read into them their necessary implications and make them serviceable instead of
useless). 
          Exhibit E, attached to Wausau's motion for summary judgment, which includes the
affidavit of Jones' wife, Mary L. Jones, is further evidence the Board fully and fairly
considered and determined this issue. In that affidavit, Jones' wife states that the dispute
over whether the cut finger her husband suffered resulted in development of endocarditis
was resolved in her husband's favor in the worker's compensation proceedings in 1979. 
She states Wausau presented Owen's affidavit in support of its proposition that Jones' heart
ailment was not caused by his cut finger, but the Board rejected this contention. 
          Wausau did not appeal the 1979 Board awards. If a suit to set aside the Board's
final ruling and decision is not brought within the time period allowed,


 the Board's decision
becomes final and that award is on a parity with the judgment of a court. Anderson v. New
York Underwriters Ins. Co., 613 S.W.2d 16, 18 (Tex. Civ. App.—Texarkana 1981, writ
dism'd). It is entitled to the same faith and credit as a judgment of a court. Ocean Accident
& Guarantee Corp. v. Pruitt, 58 S.W.2d 41, 45 (Tex. Comm'n App. 1933). The decision
thus becomes binding on the parties and unappealable. Gentry v. Travelers Ins. Co., 459
S.W.2d 709, 711 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). The Board's
final judgment is not subject to collateral attack unless fraud, accident, or mistake is
involved. See Daniels v. Travelers Ins. Co., 606 S.W.2d 724, 725 (Tex. Civ. App.—Fort
Worth 1980, writ dism'd); Gen. Am. Cas. Co. v. Rosas, 275 S.W.2d 570, 572 (Tex. Civ.
App.—Eastland 1955, writ ref'd n.r.e.). The 1979 Board awards are final and entitled to the
same full faith and credit as the judgment of a court. 
          The 1996 Judgment of the 270th Judicial District Court
          The 270th Judicial District Court granted summary judgment in favor of Jones
October 16, 1995, finding the 1979 Board awards had preclusive effect and could not be
collaterally attacked by Wausau. Wausau prematurely appealed that judgment to the First
District Court of Appeals. The trial court conducted a bench trial after which, on August 2,
1996, it rendered final judgment ordering Wausau to pay various medical expenses Jones
had incurred since 1979, interest on that judgment, and attorney's fees. On September 4,
1996, the trial court made detailed findings of fact and conclusions of law. The parties
thereafter reached a settlement agreement, and the First Court of Appeals dismissed the
appeal. The trial court's judgment is still intact and was not affected by the settlement
agreement. 
          Under the Texas Rules of Appellate Procedure, an appellate court may "set aside
the trial court's judgment without regard to the merits and remand the case to the trial court
for rendition of judgment in accordance wit [sic] . . . [an agreement signed by the parties]." 
Tex. R. App. P. 42.1; see Houston Cable TV, Inc. v. Inwood W. Civic Ass'n, 860 S.W.2d 72,
73 (Tex. 1993). In this case, neither party moved for vacatur and the First Court of Appeals
merely dismissed the appeal, leaving the trial court's judgment intact. In addition, there was
no subsequent decree by the 270th Judicial District Court incorporating the settlement
agreement, and the orders of that court are, therefore, unaffected. See Tex. Civ. Prac. &
Rem. Code Ann. § 154.071(c) (Vernon 1997) (settlement agreement does not affect
outstanding court order unless terms of agreement are incorporated into subsequent
decree). 
          Parties are permitted to contractually prevent future litigation between themselves
involving the same issues or render the judgment of a court of no effect inter se. See In re
Mem'l Hosp., 862 F.2d 1299, 1303 (7th Cir. 1988); Tex. Civ. Prac. & Rem. Code Ann.
§ 154.071(a) (Vernon 1997) (written settlement agreement is "enforceable in the same
manner as any other written contract"). Jones and Wausau point to different agreements
as the "settlement agreement" in this case. Wausau points to a November 1, 1996, Rule 11
agreement letter, stating that Wausau will pay Jones a monetary sum for "full satisfaction
of the attorney's fees and pre-judgment interest," and that the "parties agree that the
Findings of Fact and Conclusions of Law signed by [the 270th Judicial District Court] on
September 4, 1996 are vacated, of no force and effect for any future purpose, and that no
further action will be taken on same." Wausau also produced a "Release of Judgment" as
an exhibit to its motion for summary judgment, stating, "Jones . . . HEREBY FOREVER
RELEASE[S], DISCHARGE[S], AND ACQUIT[S] Employers Insurance of Wausau . . . from
payment of all money damages and attorney's fees awarded . . . under that certain Final
Judgment signed by the . . . 270th Judicial District Court of Harris County, Texas, on the
2nd day of August, 1996." Jones produced an unsigned "Partial Release of Claims" in his
response to Wausau's motion for summary judgment, which states Jones releases Wausau
"from any and all liability . . . for or because of that part of final judgment rendered on
August 2, 1996 . . . [i]n the District Court of Harris County, Texas." That release also agrees
to vacate the 270th Judicial District Court's findings of fact and conclusions of law. 
          The common thread in these agreements is that Jones agreed to release Wausau
from liability for the damages assessed in the 270th Judicial District Court judgment and to
vacate that court's findings of fact and conclusions of law in exchange for a monetary sum. 
In none of these agreements does Jones agree to render the trial court's judgment of
August 2, 1996, of no effect. The 270th Judicial District Court judgment is, therefore,
entitled to preclusive effect in this Court. 
          The trial court's August 2, 1996, judgment implies all necessary findings of fact to
support it are present, provided that the proposition is one raised by the pleadings and
supported by the evidence. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
The issue of whether Jones' heart ailment was caused by his cut finger was raised by the
pleadings and evidence before the 270th Judicial District Court and was decided in Jones'
favor in that court. For these reasons, the 270th Judicial District Court's judgment also has
preclusive effect on whether Jones' heart ailment is a compensable injury. 
          Former Article 8307 of the Workers' Compensation Act 
          Wausau's main contention is not that the elements of collateral estoppel were not
met in either the 1979 Board awards or the 1996 270th Judicial District Court judgment, but
instead that the use of collateral estoppel is precluded by statute in these circumstances. 
Wausau contends that Tex. Rev. Civ. Stat. Ann. art. 8307, § 5, specifically bars the
application of res judicata in claims for future medical benefits under the Workers'
Compensation Act. Wausau concludes that the statute authorizes it to contest whether
Jones' later-incurred medical expenses for his heart infection are naturally related to his
injured finger. 
          A brief history of Articles 8306 and 8307 will be useful in determining their purpose
and meaning. Before the 1957 amendment, Section 7 of Article 8306 provided, generally,
that the insurer should furnish reasonable medical and hospital services for an injured
worker during the first four weeks following injury and, on proper weekly certificates, should
furnish additional medical services for a total period not exceeding ninety-one days and
additional hospital services for a total period not exceeding 180 days. See Tex. Cas. Ins.
Co. v. Beasley, 391 S.W.2d 33, 39 (Tex. 1965) (op. on reh'g). The amendment of 1957
removed the time limitation on the insurer's liability for medical and hospital services. Id. 
The Act of 1957 also added a new paragraph to Section 5 of Article 8307, which states:
          Notwithstanding any other provision of this law, as amended, no award
of the Board, and no judgment of the court, having jurisdiction of a claim
against the association for the cost or expense of items of medical aid,
hospital services, nursing, chiropractic services, medicines or prosthetic
appliances furnished to an employee under circumstances creating a liability
therefor on the part of the association under the provisions of this law, shall
include in such award or judgment any cost or expense of any such items not
actually furnished to and received by the employee prior to the date of said
award or judgment. The first such final award or judgment rendered on such
claim shall be res judicata of the liability of the association for all such cost or
expense which could have been claimed up to the date of said award or
judgment and of the issue that the injury of said employee is subject to the
provisions of this law with respect to such items, but shall not be res judicata
of the obligation of the association to furnish or pay for any such items after
the date of said award or judgment. After the first such final award or
judgment, the Board shall have continuing jurisdiction in the same case to
render successive awards to determine the liability of the association for the
cost or expense of any such items actually furnished to and received by said
employee not more than six (6) months prior to the date of each such
successive award, until the association shall have fully discharged its
obligation under this law to furnish all such medical aid, hospital services,
nursing, chiropractic services, medicines or prosthetic appliances to which
said employee may be entitled; provided, each such successive award of the
Board shall be subject to a suit to set aside said award by a court of
competent jurisdiction, in the same manner as provided in the case of other
awards under this law.
 
Tex. Rev. Civ. Stat. Ann. art. 8307, § 5.
            Courts interpreting the 1957 amendment have found that the obvious purposes of
the paragraph added to Section 5 of Article 8307 was: (1) to implement the unlimited
medical and hospital provisions of Section 7 of Article 8306; and (2) to provide certain
safeguards for both the claimant and the insurer. Pearce v. Tex. Employers Ins. Ass'n, 403
S.W.2d 493, 498 (Tex. Civ. App.—Dallas 1966, writ ref'd n.r.e.). These safeguards
embodied in the "res judicata provisions" provide that no award or judgment is authorized
for such additional expenses unless and until the services are actually furnished. Id. 
Specifically, Section 5 states that no award or judgment against an insurer may include any
medical cost or expense that has not been actually furnished to and received by the
employee before the date of the judgment. Therefore, to safeguard the insurer, the "res
judicata provisions" provide that the insured is not entitled to receive expenses for future
medical care until those expenses are incurred. See Employers Mut. Cas. Co. v. Poorman,
428 S.W.2d 698, 701 (Tex. Civ. App.—San Antonio 1968, writ ref'd n.r.e.). To safeguard
the employee, Section 5 gives the Board "continuing jurisdiction" after "the first such final
award or judgment" to render "successive awards" for future medical expenses. Tex. Rev.
Civ. Stat. Ann. art. 8307, § 5; see also Pearce, 403 S.W.2d at 498. This ensures the
employee will be able to obtain medical expenses after the final judgment. To recover for
future medical expenses, the employee must establish that the expenses are reasonably
required to cure and relieve him or her from the effects naturally resulting from a
compensable injury. Tex. Rev. Civ. Stat. Ann. art. 8306, § 7 (repealed 1989); Hartford
Accident & Indem. Co. v. Thurmond, 527 S.W.2d 180, 190 (Tex. Civ. App.—Corpus Christi
1975, writ ref'd n.r.e.). The claimant must also show that the medical expenses are
reasonable and necessary. See Select Ins. Co., 506 S.W.2d at 688; Aetna Cas. & Sur. Co.
v. Jennusa, 469 S.W.2d 423, 428 (Tex. Civ. App.—Beaumont 1971, no writ); Bituminous
Cas. Co. v. Whitaker, 356 S.W.2d 835, 837 (Tex. Civ. App.—Eastland 1962, no writ).
          Wausau cites authority for the proposition enunciated above, that a Board judgment
is not res judicata on medical expenses later incurred. See Denney v. Tex. Employers Ins.
Ass'n, 780 S.W.2d 412, 413 (Tex. App.—Texarkana 1989, no writ); Lowe v. St. Paul
Mercury Ins. Co., 730 S.W.2d 458, 459 (Tex. App.—Beaumont 1987, writ ref'd); Tex.
Employers' Ins. Ass'n v. Steadman, 431 S.W.2d 556, 557 (Tex. Civ. App.—Amarillo 1968,
no writ); Dover v. Cas. Reciprocal Exch., 410 S.W.2d 306, 308 (Tex. Civ. App.—Amarillo
1966, no writ); W. Alliance Ins. Co. v. Tubbs, 400 S.W.2d 850, 852–53 (Tex. Civ.
App.—Waco 1965, writ ref'd n.r.e.). Wausau, however, reads the res judicata provisions
of Section 5 too broadly. Wausau contends the final judgment of the Board is not res
judicata for any purpose, and the safeguard provisions of Section 5 require the employee
to establish the compensability of his or her original injury every time that employee seeks
further medical care. This cannot be the meaning of Section 5. The res judicata provisions
safeguard the insurer only to the extent that it does not have to provide for future medical
expenses until they are incurred and that the insured is required to show that those future
medical expenses are reasonable and necessary to relieve the worker from the effects
naturally resulting from a compensable injury. This ensures that an injured employee will
not be able to recover any amount of unreasonable medical expenses, whether related to
the injury on the job or not. This section does not contemplate the continued relitigation of
whether the injury was compensable. 
          The Legislature has identified the purpose of the Workers' Compensation Act as to
provide prompt and fair workers' compensation payments for injured workers, to minimize
the expense and delay of court action and the resulting drain on the resources of the
claimant, and to provide for equitable administration of the law with the goal of channeling
the largest possible amount of the premium dollar into the pocket of the injured worker. See
Ryan v. Travelers Ins. Co., 715 S.W.2d 172, 175 (Tex. App.—Houston [1st Dist.] 1986). 
Along these lines, courts have frequently interpreted that the primary purposes of the
Workers' Compensation Act is to benefit and protect injured employees, and to expedite
settlement of meritorious claims. Id. Generally, the Workers' Compensation Act should be
liberally construed so as to effectuate the beneficial purposes for which it was enacted. Id.
(citing Travelers Ins. Co. v. Adams, 407 S.W.2d 282, 287 (Tex. Civ. App.—Texarkana 1966,
writ ref'd n.r.e.)). 
          In light of the history of Articles 8306 and 8307, and the purposes of the Workers'
Compensation Act, Article 8307, Section 5 does not authorize Wausau to continually
relitigate the issue of whether Jones' heart condition is a compensable injury caused by his
cut finger. The 1979 Board awards and the 1996 270th Judicial District Court judgment
both determined that Jones' heart condition was compensable as reasonably caused by his
job-related finger injury. This determination is final, and Wausau is collaterally estopped
from contesting this issue every time Jones incurs additional medical expenses. The trial
court therefore erred in granting Wausau's motion for summary judgment, and we reverse
that judgment. 
          Wausau did not contend in its motion for summary judgment that the medical
expenses Jones incurred since 1997 were unreasonable, unnecessary, or unrelated to his
heart condition. Further, there was no summary judgment evidence before the trial court
as to whether Jones' medical expenses were related to his compensable heart ailment, or
whether those expenses were reasonable and necessary. See Tex. Rev. Civ. Stat. Ann.
art. 8306, § 7; Thurmond, 527 S.W.2d at 190; Patton, 506 S.W.2d at 688. For these
reasons, we remand the proceedings to the trial court for a determination of these issues. 
In light of this disposition, it is not necessary to address Jones' contentions regarding his
summary judgment evidence or his motion for new trial. 
Counterclaim
          Jones contends that Wausau's motion for summary judgment did not address his
counterclaim for breach of the covenant and duty of good faith and fair dealing, and that
summary judgment in favor of Wausau was therefore contrary to law and must be reversed
for this additional reason. Wausau concedes it did not expressly address that cause of
action in its motion, but argues that summary judgment was proper on this claim because
the grounds asserted in its motion show there can be no recovery on that later pled cause
of action. 
          We must first determine whether Jones' counterclaim was before the trial court.
Jones filed his counterclaim July 15, 2002, four days before the July 19, 2002, summary
judgment hearing. Tex. R. Civ. P. 63 provides:
          Parties may amend their pleadings . . . provided, that any pleadings . . .
offered for filing within seven days of the date of trial . . . shall be filed only
after leave of the judge is obtained, which leave shall be granted by the judge
unless there is a showing that such filing will operate as a surprise to the
opposite party. 
The Texas Supreme Court in Goswami v. Metro. Sav. & Loan Ass'n, 751 S.W.2d 487, 490
(Tex. 1988), found that leave of court is presumed when a summary judgment states that
all pleadings were considered, when the record does not indicate that an amended pleading
was not considered, and the opposing party does not show surprise. 
          The judgment for Wausau recites that:
After considering the moving and opposition papers . . . and all other matters
presented to the Court it is hereby:
 
ORDERED . . . that . . . Illinois Employers Insurance of Wausau's
Motion for Final Summary Judgment is GRANTED. 
 
The counterclaim was part of the record before the trial court, and the trial court's judgment
states that all presented matters were considered by the court. See id. As in Goswami, the
record here does not reflect whether leave of court was requested or granted, nor is there
any indication the trial court refused leave to file the counterclaim. Because there is no
basis in the record to conclude that Jones' counterclaim was not considered by the trial
court, and because Wausau did not show any surprise or prejudice, leave of court is
presumed. Jones' claim against Wausau for breach of the covenant and duty of good faith
and fair dealing was before the court.
          This presents a problem of finality. The general rule is that appellate courts have
jurisdiction only over final judgments. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001). An order or judgment is not final for purposes of appeal unless it actually
disposes of every pending claim and party, or unless it clearly and unequivocally states that
it finally disposes of all claims and all parties. Id. at 205. Because the law does not require
that a final judgment be in any particular form, whether a judicial decree is a final judgment
must be determined from its language and the record in the case. Id. at 205–06. A
judgment that finally disposes of all remaining parties and claims, based on the record in
the case, is final, regardless of its language. Id. at 200. Thus, if a court has dismissed all
of the claims in a case but one, an order determining the last claim is final. Id. That is not
the case here. Jones' counterclaim was before the trial court and was not disposed of or
otherwise dismissed. 
          Further, the language of an order or judgment can make it final if that language
expressly disposes of all claims and all parties. Id. It is not enough, of course, that the
order or judgment merely use the word "final." Id. The intent to finally dispose of the case
must be unequivocally expressed in the words of the order itself. Id. In this case, the trial
court's order granting Wausau's motion for summary judgment provides: "This judgment
finally disposes of all parties and all claims and is appealable." This language was
specifically provided for in Lehmann, and it leaves no doubt about the court's intention to
make its order final and appealable. See id. at 206. 
          The order was therefore final, but Wausau's motion for summary judgment did not
specifically address Jones' bad-faith claim. Generally, summary judgment cannot be
granted on a claim not addressed in the summary judgment proceeding. Chessher v.
Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983). As the Lehmann court
stated, a judgment granting more relief than entitled is subject to reversal. Lehmann, 39
S.W.3d at 200. Summary judgment, however, may be granted on later pled causes of
action if the grounds asserted in the motion for summary judgment show there can be no
recovery on the later pled cause of action. Sharpe v. Roman Catholic Diocese of Dallas,
97 S.W.3d 791, 797 (Tex. App.—Dallas 2003, pet. denied); see also Pinnacle Data Servs.,
Inc. v. Gillen, 104 S.W.3d 188, 197 (Tex. App.—Texarkana 2003, no pet.). Therefore, if the
grounds asserted in Wausau's motion for summary judgment had shown that Jones could
not recover on the later pled cause of action for bad faith, it would not be necessary to
remand for further proceedings on that cause of action; we would simply affirm that portion
of the trial court's judgment.


 
          The Texas Supreme Court has recognized the duty of an insurer to deal fairly and
in good faith with its insured in the processing and payment of claims. Aranda v. Ins. Co.
of N. Am., 748 S.W.2d 210, 212 (Tex. 1988); Arnold v. Nat'l County Mut. Fire Ins. Co., 725
S.W.2d 165, 167 (Tex. 1987); English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)
(Spears, J., concurring). This duty of good faith and fair dealing arises out of the special
trust relationship between the insured and the insurer. Aranda, 748 S.W.2d at 212. The
contract between a compensation carrier and an employee creates the same type of special
relationship that arises under other insurance contracts. Id. A workers' compensation
claimant who asserts that a carrier has breached the duty of good faith and fair dealing by
refusing to pay or delaying payment of a claim must establish (1) the absence of a
reasonable basis for denying or delaying payment of the benefits of the policy, and (2) the
carrier knew or should have known there was not a reasonable basis for denying the claim
or delaying payment of the claim. Id. at 213.
          Wausau contends that, while its motion for summary judgment does not expressly
mention "bad faith," the grounds in the motion sufficiently address Jones' bad-faith claim. 
Wausau contends its motion shows that Jones was not entitled to reimbursement for his
later-incurred, heart-related medical expenses under the workers' compensation policy
because those expenses were not medically necessary to treat his finger injury. Therefore,
Wausau concludes that, since it established it properly denied Jones' claim for coverage,
there is no bad-faith claim as a matter of law. See Republic Ins. Co. v. Stoker, 903 S.W.2d
338, 341 (Tex. 1995) (finding there can be no claim for bad faith when insurer has promptly
denied claim that is in fact not covered). 
          We have determined, however, that Jones is entitled to reimbursement for medical
expenses that are reasonable, necessary, and related to his heart ailment. Therefore,
Wausau's motion for summary judgment did not establish that Jones' claim was not covered
under the workers' compensation policy, or address the elements of Jones' claim for bad
faith. We therefore also reverse and remand this case for further proceedings on Jones'
counterclaim for bad faith. 
Conclusion
          The 1979 Board awards and the 1996 270th Judicial District Court judgment
collaterally estop Wausau from contesting whether Jones' heart ailment is a compensable
injury caused by his cut finger. Wausau did not contend in its motion for summary judgment
that the medical expenses Jones incurred since 1997 were unreasonable, unnecessary, or
unrelated to his heart ailment. Therefore, on remand, Jones must establish that his current
medical expenses are, in fact, reasonable, necessary, and related to his compensable heart
ailment. In addition, Wausau's motion for summary judgment did not show that Jones could
not recover on his later pled cause of action for bad faith. Summary judgment in favor of
Illinois Employers Insurance of Wausau is reversed and remanded for further proceedings
consistent with this opinion. 
 
     
                                                                           Donald R. Ross
                                                                           Justice
 
Date Submitted:      May 3, 2004
Date Decided:         May 27, 2004